LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs
and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

DAVID BUCHANAN,
EVA FIGUEROA,
and JAVON JONES,
*on behalf of themselves, FLSA Collective Plaintiffs
and the Class,*

      Plaintiffs,

      v.

PAY-O-MATIC CHECK CASHING CORP.
and THE PAY-O-MATIC CORP.,

      Defendants.

Case No.: 2:18-CV-885 (SJF) (GRB)

**FIRST AMENDED CLASS
AND COLLECTIVE ACTION
COMPLAINT**

**Jury Trial Demanded**

---

      Plaintiffs, DAVID BUCHANAN, EVA FIGUEROA, and JAVON JONES ("Plaintiffs"),

on behalf of themselves and others similarly situated, by and through their undersigned attorneys,

hereby file this First Amended Class and Collective Action Complaint against Defendants, PAY-

O-MATIC CHECK CASHING CORP. and THE PAY-O-MATIC CORP. (collectively,

"Defendants" or "Pay-O-Matic"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime wages, (2) unpaid wages resulting from time shaving, (3) unpaid wages resulting from uncompensated travel time, (4) liquidated damages and (5) attorneys' fees and costs.

2.      Plaintiffs further allege, pursuant to the New York Labor Law ("NYLL"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime wages, (2) unpaid wages resulting from time shaving, (3) unpaid wages resulting from unpaid travel time, (4) liquidated damages, (5) statutory penalties and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff, DAVID BUCHANAN, is a resident of Kings County, New York.

6.      Plaintiff, EVA FIGUEROA, is a resident of New York County, New York.

7.      Plaintiff, JAVON JONES, is a resident of Kings County, New York.

8.      Defendant PAY-O-MATIC CHECK CASHING CORP. is a domestic business corporation organized under the laws of the State of New York with its principal corporate office and address for service of process located in Nassau County, NY, at 160 Oak Dr., Syosset, NY 11791.

9.     Defendant THE PAY-O-MATIC CORP. is a domestic business corporation organized under the laws of the State of New York with its principal corporate office and address for service of process located in Nassau County, NY, at 160 Oak Dr., Syosset, NY 11791.

**_Defendants' Pay-O-Matic Business_**

10.     Defendants own and operate a check cashing enterprise comprised of more than 150 stores operating under the common trade name "Pay-O-Matic",  which are located in New York, Kings, Bronx, Queens, Richmond, Westchester, Nassau, and Suffolk Counties. *See* **EXHIBIT A to Original Complaint** (List of Pay-O-Matic Locations). Each Pay-O-Matic store operated by Defendants offers financial services for customers including but not limited to check cashing, commercial check cashing, facilitation of money orders, and money transfer via Western Union.

11.     The Pay-O-Matic stores operate as a single integrated enterprise. They are engaged in related activities, share common ownership, and have a common business purpose. Specific facts supporting the assertion that the Pay-O-Matic Stores operate as a single integrated enterprise are as follows:

   a.     All of the Pay-O-Matic stores are owned by Defendants and controlled by Defendants' senior corporate officers.

   b.     All Pay-O-Matic stores share a common logo, pricing scheme, marketing, offer the same services, share a common look and feel, and are advertised together as a common enterprise on Defendants' website (www.payomatic.com). The locations of all the stores are accessible by clicking a link on Defendants' website labeled "Store Locator".

c. Aspiring job applicants can apply to any job opening at any one of the Pay-O-Matic stores through a job application portal powered by ADP available through a link labeled "Careers" on Defendants' website.

d. All of the Pay-O-Matic stores offer Western Union money transfer services to customers, pursuant to a contract between Defendants and Western Union.

e. Currency was transported between the Pay-O-Matic stores and between the Pay-O-Matic stores and banks by armored trucks operated by Rapid Armored Corp., a wholly owned subsidiary of Defendant THE PAY-O-MATIC CORP.

f. Supplies and provisions are delivered to each of Defendants' stores by the same delivery service.

g. Non-exempt employees are interchangeable between stores and frequently transferred by Defendants between stores to work on an as-needed basis. For example:

   i. Defendants transferred Plaintiff DAVID BUCHANAN from their Pay-O-Matic store at 263 Saratoga Avenue, Brooklyn, NY 11233 to their Pay-O-Matic Store at 1294 Fulton Street, Brooklyn, NY 11216 in 2011;

   ii. Defendants transferred Plaintiff EVA FIGUEROA from their Pay-O-Matic store at 249 East 149th Street, Bronx, NY 10451 to their Pay-O-Matic store at 1283 Westchester Ave., Bronx, NY 10459 in 2015, and required her to work at other Pay-O-Matic stores on an as-needed basis and;

iii. Defendants required Plaintiff JAVON JONES to work at several Pay-O-Matic stores in the Park Slope, Coney Island, Bensonhurst, and East New York neighborhoods of Brooklyn (including but not limited to 2323 Mermaid Avenue, Brooklyn, NY 11224, 5215 4th Avenue, Brooklyn, NY 11220, 582 5th Avenue, Brooklyn, NY 11215, and 346 7th Avenue, Brooklyn, NY 11215), on an as needed basis.

h. Defendants' Pay-O-Matic stores maintain centralized labor relations and a single payroll system for employees at all stores. ADP is the payroll services provider, and maintains records with respect to all employees at all stores. Defendants' employment policies (including, but not limited to, Defendants' policies regarding the compensation of employees) across all the Pay-O-Matic stores were formulated and instituted by Defendants' centralized human resources department.

12. At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

13. At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

14. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

15. Because all of Defendants' Pay-O-Matic stores share identical illegal wage and hour policies, Plaintiffs' claims are properly asserted as to all of the Pay-O-Matic stores on the basis of their outstanding liability to the Class members whom Plaintiffs seek to represent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16.     Plaintiffs bring claims for relief as a collective action against Defendants pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of:

a.   All non-exempt employees employed at the Pay-O-Matic stores on or after the date that is six (6) years prior to the filing of the initial Complaint who, like Plaintiff BUCHANAN, were misclassified by Defendants as exempt under the FLSA exemption for executive or managerial employees and unlawfully paid fixed salaries that did not cover overtime hours, including, but not limited to, all managers, shift managers, store managers, assistant managers, and security supervisors ("Fixed Salary Subclass"), and;

b.   All non-exempt employees employed at the Pay-O-Matic stores on or after the date that is six (6) years prior to the filing of the initial Complaint, who, like Plaintiffs FIGUEROA and JONES, were deprived of compensation for regular and overtime hours worked in violation of the FLSA, due to Defendants' policies of (i) time-shaving and (ii) refusing to compensate for time spent traveling between stores pursuant to Defendants' instructions (including, but not limited to, all tellers, cashiers, service associates and customer service representatives) ("Hourly Subclass", and collectively with the Fixed Salary Subclass, "FLSA Collective Plaintiffs").

17.     At all relevant times, Plaintiff BUCHANAN and Fixed Salary Subclass Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal

to pay Plaintiff BUCHANAN and Fixed Salary Subclass Members proper wages for overtime hours worked in excess of forty (40) hours per workweek at the rate of one and one half times the regular rate, due to their improper classification as exempt in violation of the FLSA.

18.     At all relevant times, Plaintiffs FIGUEROA, JONES and Hourly Subclass Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiffs FIGUEROA, JONES and Hourly Subclass Members for regular and overtime hours due to Defendants' policies of (i) time shaving of regular and overtime hours worked and (ii) failing to provide compensation for mid-shift travel between Pay-O-Matic store locations required by Defendants, all in violation of the FLSA.

19.     The claims of Plaintiffs stated herein are essentially the same as those of FLSA Collective Plaintiffs. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

### RULE 23 CLASS ALLEGATIONS

20.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of:

> a.   All non-exempt employees employed at the Pay-O-Matic stores on or after the date that is six (6) years prior to the filing of the initial Complaint, who, like Plaintiff BUCHANAN, were misclassified by Defendants as exempt under the

NYLL exemption for executive or managerial employees, and unlawfully paid fixed salaries that did not cover overtime hours worked, including, but not limited to, all managers, shift managers, store managers, assistant managers, and security supervisors ("Fixed Salary Subclass"), and;

b. All non-exempt employees employed at the Pay-O-Matic stores on or after the date that is six (6) years prior to the filing of the initial Complaint who, like Plaintiffs FIGUEROA and JONES, were deprived of compensation for regular and overtime hours worked in violation of the NYLL, due to Defendants' policies of time shaving and refusing to compensate for time spent traveling between stores on Defendants' instructions (including, but not limited to, all tellers, cashiers, service associates and customer service representatives) ("Hourly Subclass", and collectively with Fixed Salary Subclass, "Class Members").

21. The Class Members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

22. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty

(40) members of the Class. There is also no doubt that both the Fixed Salary Subclass and the Hourly Subclass have in excess of forty (40) members each

23.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions:

> a.  Plaintiff BUCHANAN and Fixed Salary Subclass members were subject to Defendants' policy of misclassifying them as exempt under the NYLL's executive and managerial exemptions. As a result of this policy, Plaintiff BUCHANAN and Fixed Salary Class members were compensated at weekly fixed salary rates of compensation that did not cover the overtime hours in excess of forty (40) hours per workweek that they were required work, in violation of the NYLL.

> b.  Plaintiffs FIGUEROA, JONES, and Hourly Subclass Members were subject to Defendants' policies of (i) time shaving and (ii) refusing to compensate for time spent traveling between stores at Defendants' direction, both of which resulted in unpaid and regular overtime wages, in violation of the NYLL.

> c.  Plaintiffs BUCHANAN, FIGUEROA, JONES, and all Class Members were subject to Defendants' practices of failing to provide proper wage and hour notices and wage statements that satisfied the NYLL's requirements for wage and hour notices and wage statements.

Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.

Plaintiffs and Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26.    Defendants and other employers throughout the country violate the New York Labor Law and applicable state laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a)  Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law and applicable state laws;

    b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and the Class members properly;

    c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and the Class members for their work;

    d)  Whether Defendants failed to pay Plaintiffs and the Class members the full and proper overtime compensation to which they were entitled for hours worked over forty (40) per workweek;

    e)  Whether Defendants compensated Fixed Salary Subclass Members on a fixed salary basis without any agreement that such fixed salary would cover overtime

hours in excess of forty (40) per workweek;

f) Whether Defendants improperly misclassified Fixed Salary Subclass Members as exempt from overtime;

g) Whether Defendants subjected Hourly Subclass Members to time shaving, resulting in unpaid regular and overtime hours;

h) Whether Defendants failed to pay Hourly Subclass Members wages for time spent traveling between stores on Defendants' instructions;

i) Whether Defendants provided proper wage statements informing Class Members of information required to be provided on wage statements as required under the New York Labor Law; and

j) Whether Defendants provided proper wage and hour notice to Class Members, including all information required under the New York Labor Law, upon hiring, and where required thereafter .

## STATEMENT OF FACTS

### *Plaintiff DAVID BUCHANAN*

28. In 1997, Plaintiff DAVID BUCHANAN was hired by C.L.B. Check Cashing, which was integrated into Defendants' Pay-O-Matic check cashing business in 2008. From 2011 until the termination of his employment on or about September 26, 2016, Plaintiff worked for Defendants at the Pay-O-Matic store located at 1294 Fulton Street, Brooklyn, NY 11216. Throughout his employment period, Plaintiff BUCHANAN held the title of "store manager".

29. Even though Plaintiff BUCHANAN's job title was "store manager", Plaintiff BUCHANAN was never exempt from the overtime requirements of the FLSA or NYLL under the exemption for executive and managerial employees.

30. From prior to 2012 until the end of Plaintiff BUCHANAN's employment on or about September 26, 2016, Defendants issued weekly schedules which stated that Plaintiff BUCHANAN worked 40 hours per week, pursuant to the following schedule: 8 AM until 4:30 PM, three days per week, and 10:30 AM until 7 PM, two days per week, with a 30 minute long lunch break each day.

31. However, such schedules issued by Defendants were fraudulent, and did not accurately reflect Plaintiff BUCHANAN's schedule, or the number of hours he actually worked. In addition to the 40 hours Plaintiff was scheduled to work each week, Defendants also required Plaintiff BUCHANAN to work between 5 and 15 hours that did not appear on the schedule each workweek, as follows:

    a. Each work day, Plaintiff BUCHANAN was required to work past the time his shift was scheduled to end to ensure that the amount of cash in-store was correct. This resulted in approximately 30 minutes to 1 hour of additional work time each day.

    b. Defendants automatically deducted 30 minutes each day from Plaintiff BUCHANAN's compensated hours based on a purported 30 minute lunch break, even though Plaintiff BUCHANAN was required to work through his shifts without taking any breaks.

    c. Approximately once per month, Plaintiff BUCHANAN was required by Defendants to work an additional weekly shift approximately 9-10 hours in duration, on a day that he would ordinarily be off from work.

In total, counting his scheduled and unscheduled working hours, Plaintiff BUCHANAN worked approximately 45-55 hours each week.

32.     At all relevant times, Defendants paid Plaintiff BUCHANAN a fixed weekly salary, even though there was never any agreement that such fixed weekly salary covered the overtime hours in excess of 40 he was required to work each week:

   a.   From prior to 2012 until approximately February 2016, Plaintiff BUCHANAN was paid a fixed salary of $982.69 per week.

   b.   Then, from approximately February 2016 until the end of Plaintiff BUCHANAN's employment on approximately September 26, 2016, Plaintiff BUCHANAN was paid a fixed salary of $1040 per week.

### *Defendants Unlawfully Misclassified Plaintiff BUCHANAN and Fixed Salary Subclass Members As Exempt From Overtime*

33.     Plaintiff BUCHANAN and Fixed Salary Subclass Members were improperly misclassified by Defendants as exempt from overtime under the executive and managerial FLSA and NYLL exemptions.

34.     Like Plaintiff BUCHANAN, Fixed Salary Subclass Members were compensated at fixed weekly rates, even though they never agreed that the fixed weekly salaries that they received would cover the overtime hours in excess of 40 that they were required to work each week.

35.     Defendants deliberately gave Plaintiff BUCHANAN the misleading title of "store manager" in an attempt to support their misclassification of him as exempt from overtime, even though Plaintiff BUCHANAN's duties did not pertain to the management or administration of the Pay-O-Matic store that he worked in or any other subdivision of the Pay-O-Matic business. At all relevant times, Plaintiff BUCHANAN's duties (which included counting the cash in the store and interacting with customers) were largely ministerial in nature. Defendants never permitted Plaintiff BUCHANAN to exercise discretion or independent judgment with respect to matters of significance. All such decisions were taken by senior officials of Defendants, who did not solicit

Plaintiff BUCHANAN's input. Further, Plaintiff BUCHANAN was subject to the direct control and supervision of Defendants at all times.

36.     Likewise, other Fixed Salary Subclass Members bestowed with misleading titles including, but not limited to "manager," "shift manager", and "assistant manager", and "security supervisor", actually had no authority to manage the Pay-O-Matic business or any particular Pay-O-Matic store, were under the direct control and supervision of Defendants and senior executives of Pay-O-Matic, and were not authorized by Defendants to make any significant decisions.

37.     The above-referenced titles bestowed on Plaintiff BUCHANAN and Fixed Salary Subclass Members suggested that they (i) had the authority to materially alter the employment conditions of other employees by changing their schedules and/or wages, and (ii) had the authority to hire and fire employees, or at least the power to make binding recommendations as to the hiring and firing of employees. However, in reality, Plaintiff BUCHANAN and Fixed Salary Subclass Members lacked the authority to alter the hours or wages of other employees, or to hire or fire other employees.

38.     Defendants' senior officials, including district managers, and human resources personnel maintained total control over employee working hours and wages. Based on Plaintiff BUCHANAN's personal observations and experiences, and his conversations with other employees of Pay-O-Matic, Plaintiff BUCHANAN and Fixed Salary Subclass Members were not in any way empowered to make any ultimate decisions about the employment of any other employees. In fact, senior officers of Pay-O-Matic and members of the Pay-O-Matic human resources department would not even inform Plaintiff BUCHANAN of changes in scheduling at the store he worked at prior to implementing them.

39.     Based on Plaintiff BUCHANAN's personal observations, and his conversations with other employees of Pay-O-Matic, Defendants' senior officials and human resources personnel also maintained total control over hiring and firing of employees. Defendants did not permit Plaintiff BUCHANAN or Fixed Salary Subclass Members to influence the hiring or firing processes in any way.

### Plaintiff EVA FIGUEROA

40.     Plaintiff EVA FIGUEROA was hired by Pay-O-Matic as a teller and customer service representative in 2008. She worked for Pay-O-Matic until March 2017. During her employment period, Plaintiff FIGUEROA worked at the Pay-O-Matic locations at 249 East 149th Street, Bronx, NY 10451 and 1283 Westchester Avenue, Bronx, NY 10459, in addition to other Pay-O-Matic locations that Defendant required her to report to and work at on an as-needed basis.

41.     From approximately January 2012 until July 2015, Plaintiff FIGUEROA was compensated at a base hourly rate of $11.00 per hour. Then, from July 2015 until the end of her employment in March 2017, Plaintiff FIGUEROA was compensated at a base hourly rate of $14.00 per hour.

42.     Defendants issued weekly schedules to Plaintiff FIGUEROA that stated that she was scheduled to work from 8 AM to 4 PM, 5-6 times a week, for a total of 40-48 hours per week. However, such schedules issued by Defendants were fraudulent, and did not accurately reflect Plaintiff FIGUEROA's schedule, or the number of hours she actually worked.

43.     In addition to the hours she was scheduled to work each week, Defendants also required Plaintiff FIGUEROA to work approximately 5-8 additional regular and overtime hours that did not appear on the schedules Defendants distributed each workweek. Plaintiff FIGUEROA

never received any regular or overtime compensation for these 5-8 additional, unscheduled hours she was required to work each week.

44. Defendants subjected Plaintiff FIGUEROA to time shaving, resulting in unpaid regular and overtime hours, as follows:

      a. Each work day, Plaintiff FIGUEROA was required to work past the time her shift was scheduled to end to close out her register, in accordance with Defendants' rules for employees. This took approximately 30 minutes per day. However, she was not compensated by Defendants for this post-shift time spent closing out her register. This practice resulted in approximately 30 minutes of uncompensated work time each day.

      b. Defendants automatically deducted 30 minutes each day from Plaintiff FIGUEROA's compensated hours based on a purported half hour lunch break, even though Plaintiff FIGUEROA was required to work through her shifts without taking any breaks. This practice resulted in approximately 30 minutes of uncompensated work time each day.

      c. Defendants did not pay Plaintiff FIGUEROA based on her actual time worked each day, but instead unlawfully rounded down the hours worked by Plaintiff FIGUEROA each day to the quarter hour. This practice resulted in approximately 15 minutes of uncompensated work time each workday.

45. Plaintiff FIGUEROA was directed by Defendants to clock out in the middle of the workday and report to work at a different Pay-O-Matic location approximately once per week on average. She was only allowed to clock back in upon reaching the Pay-O-Matic location that Defendants required her to travel to. Even though such travel was an integral component and

condition of her employment, Plaintiff FIGUEROA did not receive her hourly compensation for the time that she spent traveling between Pay-O-Matic locations pursuant to Defendants' instructions. As a result of this policy, Plaintiff FIGUEROA did not receive compensation for approximately 1-2 hours per workweek, on average.

46.     In total, counting Plaintiff FIGUEROA's scheduled and unscheduled working hours and time that she was required to spend traveling between Pay-O-Matic locations, Plaintiff FIGUEROA worked approximately 45-57 hours each week.

### *Plaintiff JAVON JONES*

47.     Plaintiff JAVON JONES was hired by Pay-O-Matic as a teller and customer service representative in approximately June 2016. He worked for Pay-O-Matic until approximately December 2017. During his employment period, Plaintiff JONES was required by Defendants to work at several Pay-O-Matic store locations, including but not limited to 2323 Mermaid Avenue, Brooklyn, NY 11224, 5215 4th Avenue, Brooklyn, NY 11220, 582 5th Avenue, Brooklyn, NY 11215, and 346 7th Avenue, Brooklyn, NY 11215.

48.     Throughout his employment by Defendants, Plaintiff JONES was compensated at a base hourly rate of $11.00 per hour.

49.     Throughout his employment period, Defendants issued weekly schedules to Plaintiff JONES that stated that his hours were 4 PM to 12 PM, 5 days per week.  However, such schedules issued by Defendants were fraudulent, and did not accurately reflect Plaintiff JONES's schedule, or the number of hours he actually worked.

50.     In addition to the hours she was scheduled to work each week, Defendants also required Plaintiff JONES to work approximately 10 additional regular and overtime hours that did not appear on the schedules Defendants distributed each workweek. Plaintiff JONES never

received any regular or overtime compensation for these 10 additional, unscheduled hours she was required to work each week.

51.    Defendants subjected Plaintiff JONES to time shaving, resulting in unpaid regular and overtime hours, as follows:

a.    Each work day, Plaintiff JONES was required to work past the time his shift was scheduled to end to close out her register, in accordance with Defendants' rules for employees. This took approximately 30 minutes per day. However, he was not compensated by Defendants for this post-shift time spent closing out his register. This practice resulted in approximately 30 minutes of uncompensated work time each day.

b.    Defendants automatically deducted 30 minutes each day from Plaintiff JONES's compensated hours based on a purported half hour lunch break, even though Plaintiff JONES was required to work through his shifts without taking any breaks. This practice resulted in approximately 30 minutes of uncompensated work time each day.

c.    Defendants did not pay Plaintiff JONES based on his actual time worked each day, but instead unlawfully rounded down the hours worked by Plaintiff JONES each day to the quarter hour for compensation purposes.  This practice resulted in approximately 15 minutes of uncompensated work time each workday.

52.    Plaintiff JONES was directed by Defendants to clock out in the middle of the workday and report to work at a different Pay-O-Matic location approximately 4-5 times per week on average. He was only allowed to clock back in upon reaching the Pay-O-Matic location that Defendants required her to travel to. Even though such travel was an integral component and

condition of his employment, Plaintiff JONES did not receive his hourly compensation for the time that he spent traveling between Pay-O-Matic locations at Defendants' direction. As a result of this policy, Plaintiff JONES did not receive compensation for approximately 5-10 hours per workweek, on average.

53.     In total, counting Plaintiff JONES's scheduled and unscheduled working hours and off-the-clock time that he was required by Defendants to spend traveling between Pay-O-Matic locations, Plaintiff JONES worked approximately 50-55 hours each week.

***Plaintiffs FIGUEROA, JONES and Hourly Subclass Members Suffered as a Result of Defendants' Time-Shaving and Refusal to Compensate For Required Travel Time Between Stores***

54.     Plaintiffs FIGUEROA, JONES and Hourly Subclass Members suffered due to Defendants' policies of time-shaving and failing to compensate them for travel time required as a condition of employment. Due to these unlawful policies imposed by Defendants, Plaintiffs FIGUEROA, JONES, and Hourly Subclass Members were deprived of regular and overtime compensation to which they were entitled, in violation of the FLSA and NYLL.

55.     At all relevant times, Hourly Subclass Members worked in excess of 40 hours per workweek. As with Plaintiffs FIGUEROA and JONES, Defendants issued weekly schedules to Hourly Subclass Members which stated their scheduled shifts. However, such schedules issued by Defendants were at all times fraudulent. The schedules did not accurately reflect the hours that Hourly Subclass Members worked each day or each week.

56.     Similarly to Plaintiffs FIGUEROA and JONES, Defendants required Hourly Subclass Members to work at least 5 additional regular and overtime hours that did not appear on the schedules distributed each workweek. Hourly Subclass Members never received any regular or overtime compensation for additional, unscheduled hours they were required to work each

week, due to Defendants' policies of (i) time-shaving and (ii) refusing to compensate for required travel time between the Pay-O-Matic stores:

a. Each work day, Hourly Subclass Members were required to work past the time their shifts were scheduled to end to close out their registers in accordance with Defendants' rules for employees. However, Defendants refused to compensate Hourly Subclass Members for this post-shift time spent closing out their registers. This practice resulted in approximately 30 minutes of uncompensated work time each day

b. Defendants automatically deducted 30 minutes each day from Hourly Subclass Members' compensated hours based on a purported 30 minute lunch break, even though Hourly Subclass Members were required to work through their shifts without taking any breaks. This practice resulted in approximately 30 minutes of uncompensated work time each day.

c. Defendants did not pay Hourly Subclass Members based on actual time worked each day, but instead unlawfully rounded down the hours worked by Hourly Subclass Members each day to the quarter hour for compensation purposes. This practice resulted in approximately 15 minutes of uncompensated work time each workday.

57. Hourly Subclass Members were each directed by Defendants to clock out in the middle of the workday, and then travel to and work at a different Pay-O-Matic store location, at least once per week on average. Hourly Subclass Members were only allowed to clock back in upon reaching the Pay-O-Matic location that Defendants required her them to report to. Even though such travel was an integral component and condition of employment, Hourly Subclass

Members did not receive compensation for the time that they spent traveling between Pay-O-Matic locations at Defendants' direction. As a result of this policy, Hourly Subclass Members did not receive any regular or overtime compensation for at least 1-2 hours per workweek.

### *Defendants' Failure to Provide Class Members Proper Wage and Hour Notices and Wage Statements In Compliance with The NYLL*

58.     During Plaintiffs' employment by Defendants, Defendants never provided them with wage statements compliant with the requirements of the NYLL. The wage statements provided to Plaintiff BUCHANAN either did not state his hours worked at all, or inaccurately stated that he worked only 40 hours a week. The wage statements provided to Plaintiffs FIGUEROA and JONES did not accurately state their hours worked, as they did not state regular and overtime hours for which Plaintiffs FIGUEROA and JONES were not compensated for due to time-shaving. Like those provided to Plaintiffs, the wage statements provided to Class Members were universally fraudulent. The wage statements provided to all Class Members either did not state hours worked at all, or stated hours worked inaccurately, in violation of the NYLL.

59.     During Plaintiffs' employment by Defendants, Defendants never provided them with wage and hour notices annually or upon changes in pay rate as required under the NYLL. Similarly, Class Members were never provided with wage and hour notices annually or upon changes in pay rate, in violation of the NYLL.

60.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, FLSA Collective Plaintiffs, and Class Members for all regular and overtime hours, in violation of the FLSA and New York Labor Law.

61.     Based on Plaintiffs' personal observations and conversations with other employees at Pay-O-Matic, employees misclassified by Defendants as exempt under the FLSA and NYLL exemptions for executive or managerial employees (including, but not limited to, all employees

holding the titles "manager", "shift manager," "store manager," "assistant manager," and "security supervisor") at the Pay-O-Matic stores had similar work hours that regularly exceeded forty (40) per week, and similarly suffered from common policies and practices resulting in a failure to pay proper overtime wages. Fixed Salary Class Members were not paid for their overtime, and were instead paid a fixed weekly salary, regardless of overtime hours worked.

62.     To the extent that Defendants raise an affirmative defense that Plaintiff BUCHANAN or Fixed Salary Subclass Members were not entitled to overtime compensation because they were exempt, such employees were misclassified because they did not meet the exemption requirements under the FLSA or NYLL. Therefore, Plaintiff BUCHANAN and Fixed Salary Subclass Members were entitled to overtime compensation (at an overtime rate of one-and-one-half of the regular rate) for all hours worked in excess of forty (40) per week. Defendants were not permitted to evade overtime payment by paying the employees a fixed salary.

63.     At all relevant times, Plaintiffs FIGUEROA and JONES and Hourly Subclass Members regularly worked over forty (40) hours per week, but due to time shaving, Defendants failed to pay them the proper overtime compensation in violation of the FLSA and New York Labor Law.

64.     At all relevant times, Plaintiffs FIGUEROA and JONES and Hourly Subclass Members regularly worked over forty (40) hours per week. However, due to Defendants' failure to compensate them for time spent traveling between Pay-O-Matic locations at Defendants' direction, Plaintiffs FIGUEROA and JONES and Hourly Subclass Members were deprived of proper overtime compensation, in violation of the FLSA and New York Labor Law.

65.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiffs and Class Members as required under the New York

Labor Law. The wage statements provided to Plaintiff and Class Members did not correctly state the number of hours worked.

66.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiffs and Class Members as required under the New York Labor Law.

67.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

68.     Plaintiffs reallege and reaver Paragraphs 1 through 67 of this First Amended Class and Collective Action Complaint as if fully set forth herein.

69.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

70.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

71.     At all relevant times, Defendants had gross annual revenues in excess of $500,000.

72.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all overtime hours worked at the statutory rate of one

and one-half times the regular pay rate for each hour worked in excess of forty (40) hours in a workweek.

73. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

74. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

75. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

76. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

77. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages.

78. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

79.     Plaintiffs reallege and reaver Paragraphs 1 through 78 of this Class and Collective Action Complaint as if fully set forth herein.

80.     At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

81.     Defendants willfully violated Plaintiffs and Class members' rights by failing to pay them for all overtime hours worked at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

82.     Defendants willfully violated Plaintiffs and Class members' rights by engaging in time-shaving, resulting in unpaid regular and overtime hours.

83.     Defendants willfully violated Plaintiffs and Class members' rights by instituting a policy of failing to compensate for travel time required as a condition of employment, resulting in unpaid regular and overtime hours.

84.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

85.     Defendants knowingly and willfully failed to provide proper wage and hour notices to employees pursuant to the requirements of the New York Labor Law.

86.     Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid regular and overtime compensation, regular and overtime compensation due as a result of time-shaving, regular and overtime compensation due as a result of a policy of failing to compensate for travel time, damages for

unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid overtime compensation due under the FLSA and NYLL;

d. An award of unpaid compensation due to time-shaving;

e. An aware of unpaid compensation resulting from a failure to compensate for travel time required as a condition of employment;

f. An award of liquidated damages as a result of Defendants' willful failure to pay overtime and regular compensation for all hours worked (including those for which compensation was not paid due to Defendants' time shaving and failure to compensate for travel time), pursuant to the FLSA;

g. An award of liquidated damages as a result of Defendants' willful failure to pay overtime and regular compensation for all hours worked (including those for which compensation was not paid due to Defendants' time shaving and failure to compensate for travel time), pursuant to the NYLL;

h.  An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.  Designation of Plaintiffs as the Representative of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiffs as Representatives of the Class; and

l.  Such other and further relief as this Court deems just and proper.


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: April 4, 2018                    Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 1976)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

By:      /s/ C.K. Lee
C.K. Lee (CL 4086)