

**HH&K**
Hinman, Howard & Kattell LLP
ATTORNEYS

80 Exchange Street | P.O. Box 5250 | Binghamton NY 13902-5250 | www.hhk.com

ALBERT J. MILLUS, JR.
Partner
amillus@hhk.com
P: (607) 231-6724
F: (607) 723-6605

**VIA ELECTRONIC CASE FILING**          January 17, 2019
Hon. Gary R. Brown
United State Magistrate Judge
United States District Court
Eastern District of New York
100 Federal Plaza, P.O. Box 9014
Central Islip, New York 11722-9014

      Re:    <u>David Buchanan v. Pay-O-Matic Check Cashing Corp., *et al*.</u>
               Civil Action No.:  2:18-cv-00885-LDW-GRB

Dear Magistrate Judge Brown:

      We represent defendants in this class and collective action, which alleges wage and hour violations under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs are represented by lead counsel, C.K. Lee, Esq. of the Lee Litigation Group, PLLC.  We write in response to plaintiffs' letter motion dated January 10, 2019.

      We respectfully request that plaintiffs' counsel's letter motion be denied in its entirety as it seeks questionable discovery demands and timelines solely intended to punish defendants for the parties' failure to reach a settlement agreement. Throughout this litigation, plaintiffs' counsel has engaged in repeated tirades and profanity against defendants and its counsel.  In view of plaintiffs' ongoing outrageous and undignified conduct, defendants request that this Court establish order and reason in this matter by way of a case management conference that sets the scope of discovery and schedule consistent with the complexity of this litigation.

      Further, defendants' counsel will be filing shortly a motion seeking to disqualify the Lee Litigation Group as counsel for the subclasses identified in plaintiffs' Complaint because of inherent and irreconcilable conflicts of interest that exist between the subclasses.  This has been addressed with Mr. Lee on multiple occasion, but Mr. Lee has adamantly refused to discuss the issue. Consequently, questions regarding the scope and schedule of discovery presumably will be subject to the Court's determination regarding the disqualification issue.  Pursuant to my discussion with Judge Bianco's Chambers today, we will shortly be filing a request for a pre-motion conference regarding this issue.

      <u>**Counsel's Misrepresentation Regarding the Mediation.**</u> This action was stayed by the Court at the parties' joint request on August 14, 2018 to allow for mediation.  The case remains stayed to the present time.  The mediation was conducted at the JAMS office in Manhattan on January 10, 2019.  Carol Wittenberg was the mediator.

Hon. Gary R. Brown
January 17, 2019
Page 2

Mr. Lee has made in his motion letter a heinous misrepresentation to the Court in stating that the mediation ended prematurely because of "Defendants' refusal to participate in the mediation process." Prior to the mediation, Pay-O-Matic diverted key internal resources for several months to gather and produce to plaintiffs data pertaining to 300 employees (10% of the putative class members) chosen at random by plaintiffs' counsel. Five Pay-O-Matic executives (the Managing Director of the Board, the President and CEO, CFO, COO and VP of HR) attended the mediation together with myself and my co-counsel, Miriam Schindel. Mr. Lee and his associate, Taimur Alamgir, Esq., arrived one half hour late, and did not bother to bring their clients, who by law are required to supervise class counsel. *Gill v. Monroe County Dept. of Social Servs.*, 92 FRD 14, 16 (W.D.N.Y. 1981).

Pay-O-Matic expected to meet jointly with plaintiffs' counsel at the start of the process, as is the customary practice. However, Ms. Wittenberg advised Pay-O-Matic that she believed a joint meeting would be futile (which, based on our assessment of the situation, we believe was due to plaintiffs' counsel's posturing.) Instead, she spent three hours shuttling between the parties in their separate rooms. Pay-O-Matic executives discussed with her the memorandum and extensive documents, charts, and computer files that had been previously submitted to her in preparation for the mediation. She advised defendants that Mr. Lee had a settlement range in mind, and that if defendants were not in that ballpark, Mr. Lee was not willing to continue the mediation. Shortly thereafter, Ms. Wittenberg returned to report that Mr. Lee wished to speak jointly with her, Ms. Schindel and I, and we all assumed that he wanted to resume the settlement discussions. However, upon entering plaintiffs' conference room, Mr. Lee angrily announced that he immediately wanted to "discuss discovery" and demanded the lists of all putative class and collective action members. We advised Mr. Lee that we thought we were going to continue the settlement discussions and were not immediately prepared to discuss discovery issues, but would confer with him the following week. At that point, it was clear there would be no further settlement discussions.

**Good Faith Discussion of Discovery Issues.** Plaintiffs' counsel has not satisfied its obligation to discuss discovery disputes in good faith prior to filing this abusive motion during the stay of this action. Discovery, other than the extensive discovery provided to plaintiffs' counsel in connection with the mediation, has been stayed along with the action. The filing of his letter motion late last Thursday afternoon just several hours after Mr. Lee aborted the settlement discussions is just another illustration of his abuse of the judicial process, and his unrestrained anger and vituperative language when he does not get what he wants, when he wants it.

**Notice to Putative Collective Action Plaintiff.** The form of notice demanded by plaintiffs' counsel is overreaching and does not comport with a fair representation of all the information putative collective class action members should know. In addition, there is also an issue regarding the putative collective action plaintiffs to be notified. Plaintiffs' counsel demands notice going back six years. However, under the FLSA statute of limitations, in the absence of any evidence of willfulness, dissemination of the notice should be restricted to those employees who worked for Pay-O-Matic during the two-year period prior to the tolling of the statute of limitations on August 2, 2018. *See, e.g., Garcia v. Chipotle Mexican Grill, Inc.*, 2016 U.S. Dist. LEXIS 153531 at *29-31 (S.D.N.Y. 2016). In the absence of class certification under the NYLL, plaintiffs are not entitled to a six-year notice period.

**List of Putative Collective Action Members.** As the matter has been stayed since August 14, 2018, and in fact remains stayed since plaintiffs' counsel have not applied to lift the stay,

Hon. Gary R. Brown
January 17, 2019
Page 3

plaintiffs' counsel cannot unilaterally establish schedules without consultation with opposing counsel, particularly since the notice and the scope of the employee list are in dispute. We request that these issues be addressed in the case management conference and that defendants be granted the opportunity to submit a brief on these issues.

**Tolling Period.** Under the FLSA, the statute of limitations is measured from the date each collective action plaintiff opts into the action. On August 2, 2008, we agreed to toll the statute in light of the agreement to mediate. There is no basis for tolling the statute as of an earlier date. Equitable tolling is only allowed in "rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Garcia v. Chipotle Mexican Grill, supra*, at *31-32. *Accord*, *Hotaranu v Star Nissan Inc.*, 2017 US Dist LEXIS 56801, at *17 (E.D.N.Y. 2017). In this case, we agreed to toll the statute of limitations on August 2, 2018, ten days after Judge Bianco ordered collective action certification. There is no logical or legal basis for fixing the tolling date as of the arbitrary date plaintiffs filed their motion for collective action certification. Further, given the fact that we agreed to the tolling as of August 2, and that the toll remains in place, the length of time it took to mediate the case is irrelevant.[1]

**Class Discovery.** This issue was previously before the Court pursuant to plaintiffs' June 19, 2018 letter motion (Dkt. 28), which we opposed (Dkt. 34). The Court directed the parties to attempt to reach resolution, but we were unsuccessful. Court then dismissed the motion as moot, and by electronic order dated July 30, 2018, ordered further briefing. The case was stayed shortly thereafter, and the further briefing never took place. We respectfully request the Court re-impose a new briefing schedule regarding the issue, as a follow-up to its July 30, 2018 order.

**E-Discovery.** In plaintiffs' May 21, 2019 demand for production of documents, plaintiffs demanded a search of e-mails and employee text messages (over which defendants have no control) with twenty-nine specific search terms, plus searches of the "first and last names of the Plaintiffs and each Opt-in Plaintiff." The search terms are highly generic and guaranteed to result in hits of completely irrelevant documents, and would result in such a computer overload that a prohibitively-costly purchase of a new server would be required. We accordingly objected to the demand in our timely June 12, 2018 response. Plaintiffs' demand is still in dispute and should be addressed in the requested case management conference.

**Deposition Schedule.** In view of plaintiffs' counsel's patently unreasonable demands regarding the deposition of defendants' representatives, we respectfully request that this issue be addressed at the requested case management conference to arrive at a realistic schedule for the deposition of both defendants' representatives, the named plaintiffs, and the individuals named in papers previously filed by plaintiffs. In this regard, Mr. Lee has advised that he has taken 70 depositions in another wage-and-hour class action suit in which the defendant refused to capitulate. We respectfully request that the Court address the issue of limits on depositions at the case management conference.

---

[1] The mediation was originally scheduled for November 6, 2018. However, given the enormous effort it took to collect the discovery that we agreed to provide in connection with the mediation, it became clear that the November 6 date was unrealistic and it was adjourned to early December. Subsequently, my co-counsel, Miriam Schindel, learned that she was going to have surgery at the end of November, and it was necessary to again adjourn the mediation for about a month to allow for her recovery. Mr. Lee challenged the need for Ms. Schindel's surgery, and demanded medical proof of the need for same, and threatened sanctions against defendants because of the need to reschedule the mediation, which he did not pursue. In any event, no plaintiff has been prejudiced in the least as a result of the interval between the August 2, 2018 tolling agreement and the January 10, 2019 mediation.

Hon. Gary R. Brown
January 17, 2019
Page 4

Thank you for your attention and consideration.

Respectfully,

HINMAN, HOWARD & KATTELL, LLP

/s/ Albert J. Millus, Jr.

By
    Albert J. Millus, Jr.

:ajm
Attachment
c:    C.K. Lee, Esq. (via ECF service)
      Taimur Alamgir, Esq. (via ECF service)
      Anne Seelig, Esq. (via ECF service)
      Miriam Schindel, Esq. (via e-mail)
      File