

# HH&K
## Hinman, Howard & Kattell LLP
### ATTORNEYS

80 Exchange Street | P.O. Box 5250 | Binghamton NY  13902-5250 | www.hhk.com

ALBERT J. MILLUS, JR.
Partner
amillus@hhk.com
P: (607) 231-6724
F: (607) 723-6605

January 30, 2019

**VIA ELECTRONIC CASE FILING**

Hon. Joseph F. Bianco
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    <u>David Buchanan v. Pay-O-Matic Check Cashing Corp.</u>, *et al*.
             Civil Action No.:  2:18-cv-00885-LDW-GRB

Dear Judge Bianco:

      We represent defendants in this action, which alleges wage and hour violations under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Plaintiffs are represented by the Lee Litigation Group, PLLC.  We write pursuant to your Individual Rule III(A) to request a pre-motion conference in anticipation of our bringing a motion to disqualify Lee Litigation Group, PLLC as class counsel.  I spoke to your Chambers on January 17, and was advised that the motion should be directed to you rather than to Magistrate Judge Brown, and that we should proceed via this request for a pre-motion conference.

      Defendant Pay-O-Matic Check Cashing Corp. owns and operates 143 stores in and around New York City, and provides check cashing, money transfer, and bill payment services to the unbanked and underbanked population, as well as to customers who prefer using Pay-O-Matic's services to those of conventional banks.  Pay-O-Matic is classified as a financial institution, and is subject to extensive oversight and regulation by regulatory entities.

      Since 2011, Pay-O-Matic has classified its stores as A+, A, B, or C depending on their size and revenue production.  Each store has a store manager responsible for overseeing the store's operations.  Prior to November 2016,[1] some of the managers were classified as exempt for wage-and-hour purposes, and some were classified as non-exempt, depending on the size of the store, the number of non-exempt employees they supervised, and the nature of their duties.  Managers of A+ and A stores were generally classified as exempt, managers of C stores (which are typically staffed only by their managers) were generally classified as non-exempt, and managers of B stores were classified as exempt or non-exempt depending on the above factors.

---

[1] In November 2016, Pay-O-Matic reclassified all of its exempt store managers as exempt.  Contrary to previous false statements made by plaintiffs' counsel, the reclassification had nothing to do with allegations of wage-and-hour violations.  The reclassification was the result of a change in a United States Department of Labor regulation increasing the salary threshold for exempt employees.  Pay-O-Matic decided to reclassify the exempt store managers rather than to increase their pay to comply with the new regulation, which would have been cost-prohibitive.  This was a nationwide phenomenon.

Hon. Joseph F. Bianco
January 30, 2019
Page 2

      Pay-O-Matic also employs, on any given day, approximately 400 to 450 non-exempt customer service representatives ("CSRs"), whose sole function is to perform customer transactions and to reconcile their cash drawers at the ends of their shifts.  Prior to August 2015, CSRs recorded their time by logging into and out of a portal supplied by ADP, the nationwide payroll service vendor.  Pursuant to Pay-O-Matic policy, as embodied in its personnel manual, and training, CSRs were required to be logged in while working and logged out while not working.  Store managers (both exempt and non-exempt) were responsible for monitoring compliance with the wage-and-hour laws to be sure that CSRs were paid for time that they worked. Store Mangers were responsible for making any adjustments to the time record if they became aware that an employee had not entered all time worked.

      In August 2015, Pay-O-Matic implemented a new timekeeping system ("TL2").  With the TL2 system, employees must be logged in to conduct customer transactions, and can perform no company business if they are not logged in.  This system provides Pay-O-Matic with an enormous amount of data with which it can monitor compliance with the wage-and-hour laws.

      The original class action complaint in this matter was filed on February 9, 2018.  The sole plaintiff in the original complaint was David Buchanan.  Plaintiff Buchanan claims that he and other exempt store managers were misclassified as "exempt."

      On April 4, 2018, plaintiffs' counsel filed an amended complaint adding Eva Figueroa and Javon Jones as plaintiffs.  Ms. Figueroa was a non-exempt store manager and Mr. Jones was a non-exempt CSR.  Plaintiffs Figueroa and Jones allege that they, along with all other similarly situated non-exempt employees, were subject to pervasive, deliberate, and systematic violations of the wage-and-hour laws.  According to the non-exempt plaintiffs, they and all other non-exempt employees "were required" to work before and after their shifts without being logged into the timekeeping system; to work through their lunch periods without being paid for it; and to travel between stores during their shifts without being paid for it.  In short, they allege that they (and nearly 3,000 other non-exempt employees) were systematically "required" to work "off the clock" during the six-year period preceding the filing of the complaint.

      As is indicated above, the store managers, both exempt and non-exempt, were responsible for insuring compliance with the wage-and-hour laws and Pay-O-Matic's policies and procedures with respect to timekeeping.  Plaintiffs have never identified who allegedly "required" them to work "off the clock."  However, if plaintiffs' claims are true (which they are not), it would have been the store managers who did the "requiring."  If so, the managers would have been in blatant violation of the law and company policy.  In fact, they were duty bound to report any such violations to upper management.

      Based on the foregoing, it is highly likely that the CSRs and the store managers will be in the position of presenting conflicting testimony as to the core factual issues in the case.  Presumably, these plaintiffs and other employees will testify that they were "required" to work "off the clock."  Presumably the managers, who are purportedly represented by the same counsel, will deny it.  This is an inherent conflict that prevents plaintiffs' counsel from representing both classes of employees (indeed, three classes, as the interests of non-exempt managers are similarly adverse to those of the CSRs).  In addition, it is possible that one or more managers will testify, against their self-interest, that they did require the employees work without

Hon. Joseph F. Bianco
January 30, 2019
Page 3

getting paid for it.  The fact that all three classes are represented by the same attorneys raises the possibility of collusion.

Further, as the Ortiz and Literary Works cases cited below demonstrate, the conflict presents a real impediment to settlement, a point that we have previously raised both with Mr. Lee and with Carol Wittenberg in connection with the mediation.

As stated in Ortiz v. Fibreboard Corp., 527 US 815, 856 (1999):

First, it is obvious after Amchem [Prods. v. Windsor], 521 US 591, 626 (1997)] that a class divided between holders of present and future claims (some of the latter involving no physical injury and to claimants not yet born) requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel.

*See also* Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp., 654 F.3d 242 (2nd Cir. 2011) (rejecting settlement and directing the creation of subclasses represented by separate counsel).  *See also* Lewis v. Natl. Football League, 146 F.R.D. 5, 11-12 (D.D.C. 1992) ("If in maintaining the class action in [a case] the attorneys should be disqualified because of a conflict of interest, then certainly they are not "generally able to conduct the litigation" and there is inadequate representation of the class's interest") (denying class certification with leave to renew upon retention of new counsel or clearing of conflicts by existing counsel).

Lewis also provides that "any party, including the court *sua sponte,* may raise inadequacy of counsel issues."  *Id*. at 12.

Baas v. Dollar Tree Stores, Inc., 2008 US Dist LEXIS 119908 (N.D. Cal. 2008) is highly instructive as to the issue of conflicting testimony from managers and the CSRs.  Named plaintiffs in Baas brought a class action alleging that they were required to work "off the clock" and that their manager, Hansen, knew about and encouraged the practice.  Hansen denied plaintiffs' contention.  Plaintiffs' counsel also represented Hansen in a different lawsuit.  The Court ruled that plaintiffs' counsel had a conflict and denied class certification, stating: "To reconcile the testimony of Hansen and Lofquist, Plaintiffs' counsel will either need to portray Hansen as a liar or as a manager who knowingly violated his company's policies."  *Id*. at 9.[2]

Under the factual circumstances present in this case and the law, we respectfully submit that Lee Litigation Group should be disqualified from representing plaintiffs in this matter because of its inherent conflict of interest in purporting to represent both the exempt managers, non-exempt managers, and CSRs.  It is inconceivable that all or even many of the Pay-O-Matic managers from 2012 to 2018 will testify favorably to the CSRs that they were required to work off the clock.  Accordingly, Pay-O-Matic requests leave to bring a motion for disqualification.

Thank you for your attention and consideration.

---

[2] In addition to the foregoing, *see also* New York Rules Prof. Conduct, R 1.7 ("(a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that * * *:  (1) the representation will involve the lawyer in representing differing interests * * *."

Hon. Joseph F. Bianco
January 30, 2019
Page 4

        Respectfully,

        HINMAN, HOWARD & KATTELL, LLP

          /a/ Albert J. Millus, Jr.

By
        Albert J. Millus, Jr.

:ajm
c:      C.K. Lee, Esq. (via ECF service)
       Taimur Alamgir, Esq. (via ECF service)
       Miriam Schindel, Esq. (via e-mail)
       File