

Robert W. Ottinger
Direct: (212) 583-0030
robert@ottingerlaw.com

401 Park Avenue South
New York, NY 10016
(212) 571-2000

535 Mission Street, 14th Fl.
San Francisco, CA 94105
(415) 262-0096

OTTINGERLAW.COM

June 10, 2020

**By ECF**

Hon. Steven M. Gold
U.S. Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    **Buchanan v. Pay-O-Matic Check Cashing Corp., et al.
No. 19-cv-3571 (SMG)**

Dear Judge Gold:

      We represent Plaintiff-intervenor Carmen Luyando in the above-referenced matter and write to request that the Court allow us to contact putative class and/or collective members for purposes of investigating the fairness of the proposed settlement, as we believe Lee Litigation Group, PLLC ("LLG") has an ongoing conflict of interest in representing or negotiating a settlement for both sub-classes of managers and customer sales representatives ("CSRs"). *See* Dkt. No. 107.

      Defendants previously moved to disqualify LLG on the ground that Defendants' managers were responsible for enforcing CSRs' compliance with Defendants' timekeeping policies, which created a conflict between the two groups. *See* Dkt. No. 69-10. Specifically, managers would either be in the position of admitting that they did not properly enforce Defendants' timekeeping policies, or denying CSRs' claims, which would put the managers into direct conflict with the CSRs and would require LLG to impeach or discredit the managers. *See, e.g., Baas v. Dollar Tree Stores, Inc.*, 2008 WL 906496 (N.D. Cal. 2008) (finding that counsel could not adequately represent class where it represented manager in a different matter who knew about and encouraged "off-the-clock" work of putative class members in the current matter, stating, "The spectacle of an attorney skewering her own client on the witness stand in the interest of defending another client demeans the integrity of the legal profession and undermines confidence in the attorney-client relationship.") (internal citations omitted); *see also Walker v. Apple*, 4 Cal.App.5th 1098 (2016). On May 24, 2019, the Court resolved Defendants' motion to disqualify LLG by ordering that LLG would represent a sub-class of plaintiffs with manager titles and The Ottinger Firm, P.C. ("The Ottinger Firm") would represent a sub-class of CSRs, which addressed LLG's conflict of interest without disqualifying LLG.

Subsequently, without The Ottinger Firm's knowledge or consent, LLG violated the Court's May 24, 2019 minute entry and reached a global settlement in principle for both sub-classes of managers and CSRs, even though LLG's conflict of interest in representing both sub-classes affected settlement negotiations. *See* NYC Eth. Op. 2004-01, 2004 WL 2155078 at *6 (N.Y.C. Assn. B. Comm. Prof. Jud. Eth.) (stating that, in the context of settlements, where there are "genuine conflict of interests" among class members "within what has hitherto been considered a single class, the lawyer [plaintiffs' counsel] may be obliged to inform the court and clients that a single lawyer or group of lawyers can no longer properly represent the class as a whole, so that appointment of additional counsel, subclassing, or redefinition of the class is appropriate."); *see also Aliano v. CVS Pharmacy, Inc.*, 2018 WL 3625336 at *6 (E.D.N.Y. 2018) (Gold, M.J.) ("An actual conflict is not a prerequisite to a finding of inadequacy; even a potential conflict of interest is sufficient to render a named plaintiff an inadequate class representative.") (internal quotations and citations omitted). Indeed, given the potentially conflicting testimony of managers and CSRs,[1] LLG's conflict of interest likely affected the amount of any settlement. Further, the timing of the settlement suggests that LLG put its own financial interests above the putative class members' interests. *See Polar Intern. Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 118 (S.D.N.Y. 1999) ("Many courts and commentators have described the danger of a conflict of interest between plaintiffs' counsel in a class action suit and their clients – the class members they represent – namely, the temptation of class counsel to sacrifice procuring value for the class in exchange for maximizing attorneys' fees."). Following the Court's May 24, 2019 minute entry preventing LLG from continuing to represent the sub-class of CSRs, LLG surreptitiously reached a global settlement in principle without The Ottinger Firm's knowledge, and advised the Court of such settlement and requested a stay of mailing notice of a collective action on July 10, 2019, only about a month and a half after the Court ordered that LLG would no longer represent the CSRs in its May 24, 2019 minute entry. In our view, LLG appears to have rushed to a global settlement once the Court appropriately found that LLG could not represent the CSRs, and prior to the mailing of FLSA collective notice, which would inevitably add opt-in plaintiffs who could provide testimony about Defendants' compensation practices and potentially increase the value of the case.

Although, on March 25, 2020, the Court granted LLG's and Defendants' request to stay notice of a collective action and stated that LLG will represent "all prospective class members" to negotiate a settlement prior to sending notice of a collective action, *see* Dkt. No. 107, we are concerned that LLG's ongoing conflict of interest has affected settlement negotiations and that LLG is undervaluing the case. Specifically, in its preliminary approval papers, LLG downplays its own clients' claims of "off-the-clock" work, stating that documents produced by Defendants such as time and payroll records do not prove Plaintiffs' time shaving claims, including the claim that CSRs were required to perform uncompensated work at the end of their shifts or that Defendants required CSRs to work "off-the-clock" during lunch breaks. *See* Dkt. No. 112, p. 19. LLG has minimized Plaintiffs' claims as substantiated only by "anecdotal recollections," even though "off-the-clock" claims can only be proved through testimony. *See* Dkt. No. 112, p. 19.

---

[1] Although in their motion to disqualify, Defendants only addressed the potential conflict created by managers enforcing CSRs' compliance with Defendants' timekeeping policies, another potential conflict is that CSRs might testify that managers acted as the CSRs' supervisors and, accordingly, performed exempt duties, making the managers ineligible for overtime compensation under the executive exemption of the FLSA or NYLL.

In any event, the testimony in the record – namely, the declarations of Eva Figueroa and Javon Jones in support of conditional certification – indicates that putative class members worked for significant amounts of time "off-the-clock" after their shifts to "close out" their teller machines (which took approximately 15-30 minutes), and swap cash drawers (which took approximately 15 minutes), and worked through lunch breaks that were deducted from their pay. *See* Dkt. Nos. 26, ¶ 8(a), (b), (d); 27, ¶ 8(a), (b), (d).

Given our concerns about LLG's ongoing conflict of interest, and that the nature of "off-the-clock" claims is such that proving them requires testimony, we believe the only way to determine whether LLG's proposed settlement is fair is to allow The Ottinger Firm to conduct an adequate investigation of it, including by contacting and speaking to putative class members. Out of deference to the Court and its Order on March 25, 2020 stating that LLG will represent "all prospective class members" to negotiate a settlement, we are writing to the Court to seek permission to contact putative class members, though case law is clear that such contact is not prohibited prior to class certification. *See Garret v. Metropolitan Life Ins. Co.*, 1996 WL 325725 (S.D.N.Y. 1996) ("But before class certification, the putative class members are not 'represented' by the class counsel for purposes of DR 7-104 [no-contact rule].") (citing cases) (internal citations omitted); *Resnick v. American Dental Ass'n.*, 95 F.R.D 372 (N.D. Ill. 1982) ("Before certification DR 7-104 [no-contact rule] does not apply because the potential class members are not yet "represented by" counsel.") (internal citations omitted); *cf. Van Gemert v. Boeing Co.*, 590 F.2d 433 n. 15 (2d Cir. 1978) ("The argument that there is no attorney-client relationship between the absentees and class counsel is not persuasive. *A certification under Rule 23(c)* makes the Class the attorney's client for all practical purposes.") (emphasis added) (internal citations omitted); *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Intern., Inc.*, 455 F.2d 770 (2d Cir. 1972).

We thank the Court for its attention to this matter.

Respectfully submitted,

/s/ Finn Dusenbery
Finn Dusenbery