UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DAVID BUCHANAN, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class*,

                        Plaintiffs,

-against-                                                    **ORDER**
                                                             18-CV-885 (FB) (SMG)
PAY-O-MATIC CHECK CASHING
CORP. and THE PAY-O-MATIC CORP.,

                        Defendants.
-------------------------------------------------------x
GOLD, S., Magistrate Judge:

    This case was filed on February 9, 2018, as a putative class action pursuant to the Fair

Labor Standards Act ("FLSA").  Plaintiffs are represented by attorneys from the Lee Litigation

Group ("LLG").  A second case against the same defendants, also alleging violations of the

FLSA, was brought as an individual action on November 28, 2018.  *See Luyando v. Pay-O-Matic*

*Check Cashing Corp. et al*, 19-CV-3571 (FB) (SMG).  Plaintiff Carmen Luyando is represented

by lawyers from the Ottinger Firm ("Ottinger").

    In March of 2019, Ottinger filed a pre-motion conference application on behalf of

Luyando seeking to intervene in the Buchanan action.  Ltr. dated Mar. 29, 2019, Dkt. 64.

Luyando asserted in that application that she had "learned of [a] conflict of interests" between

LLG and defendants' non-exempt employees.  *Id.* at 2.  Motion practice with respect to

representation of the putative class of plaintiffs ensued.  On March 25, 2020, United States

District Judge Block issued an Order rejecting Ottinger's argument that LLG should not be

permitted to negotiate a settlement on behalf of all plaintiffs because Ottinger represented a sub-

class, and ruling that:

> (1) LLG will represent all prospective class members before notice
> is sent; and (2) if settlement negotiations fail and class notice is sent,
> the opted-in customer service representatives will be represented by
> the Ottinger Firm and the opted-in managers will be represented by
> LLG. Since notice has yet to be distributed, LLG may continue to
> negotiate a settlement on behalf of all plaintiffs.

Mem. and Order dated Mar. 25, 2020 at 2, Dkt. 107.

On April 24, 2020, LLG and counsel for defendants reported that they had finalized a class settlement agreement. Ltr. dated Apr. 24, 2020, Dkt. 109. On May 14, 2020, LLG filed a motion for preliminary approval of the settlement agreement. Dkt. 111. Thus, the trigger for Ottinger to represent opted-in customer service representatives—the failure of settlement negotiations between defendants and LLG—did not occur.

During a conference held on May 15, 2020, I set a schedule for Luyando to oppose the motion filed by LLG for preliminary approval of the class settlement agreement. Dkt. 115. During that same conference, I ordered class plaintiffs to produce to Luyando all discovery they had received from defendants. *Id.*

Now pending before the Court is a letter application in which Ottinger seeks leave to "contact putative class and/or collective members for purposes of investigating the fairness of the proposed settlement, as we believe [LLG] has an ongoing conflict of interest in representing or negotiating a settlement for both sub-classes of managers and customer sales representatives." Ltr. dated June 10, 2020, at 1, Dkt. 122.

Judge Block has already addressed Ottinger's argument that LLG has a conflict and nevertheless decided that LLG should be permitted to negotiate a settlement on behalf of all putative class members. Moreover, Ottinger has had ample time to obtain the additional information it now seeks to collect by interviewing putative class members, but apparently failed to do so. In fact, a conference was scheduled before this Court on March 27, 2020, to address a

demand for discovery by Luyando and a motion for protective order made by defendants. But that conference was adjourned with the consent of all parties in light of Judge Block's Order of March 25, 2020, quoted above, "to be rescheduled if necessary in the event class settlement is not achieved." Ltr. dated Mar. 26, 2020, Dkt. 108. Of course, as noted above, a class settlement has been reached.

Ottinger argues that the ethical rule against contacting individuals known to be represented by an attorney does not bar communications with putative class members prior to class certification. *See Garrett v. Metro. Life Ins. Co.*, 1996 WL 325725, at *6 (S.D.N.Y. June 12, 1996), *report and recommendation adopted*, 1996 WL 563342 (S.D.N.Y. Oct. 3, 1996). As its letter application implicitly recognizes, however, Ottinger's right to interview putative class members is not without limits. Courts have the authority—and responsibility—to supervise communications even with members of a putative class that has not been certified. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 499 F. Supp. 2d 415, 421 (S.D.N.Y. 2007) (ordering plaintiff's-intervener's counsel to submit class-wide communication to the court for *in camera* review before disclosure to the class where counsel had, *inter alia*, issued press releases soliciting clients and sent an *ex-parte* letter to the court); *see also In re Currency Conversion Fee Antitrust Litig*., 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) (holding that "when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization").

Ottinger's letter application indicates that the interviews it seeks to conduct are intended to develop information in support of its contention that LLG's representation is compromised by a conflict of interest. *See* Ltr. dated June 10, 2020, at 2–3. Ottinger has already made that argument to Judge Block who, at least with respect to negotiating a settlement, rejected it and

permitted LLG to represent all putative class members.  Moreover, allowing Ottinger to conduct interviews designed to develop facts supporting its position that LLG faces a conflict may well arouse suspicion among putative class members and drive a wedge between them and LLG.  If the pending motion for preliminary approval is granted, Ottinger's contacts with putative class members, raising questions about LLG's potential conflict, will have taken place shortly before putative class members receive notice of the settlement.  Though the potential interference resulting from Ottinger's interviews may not have posed a serious problem while LLG's authority to negotiate a settlement was being litigated, the question regarding LLG's conflict of interest has now been resolved.  Allowing Ottinger to plant seeds of doubt in the minds of absent class members about LLG's representation on what may be the eve of distribution of a class notice could influence the responses of those absent class members to the notice of settlement.[1]

Ottinger, moreover, has been provided with all of the discovery that defendants produced to LLG, and should therefore be adequately prepared, even without contacting putative class members, to oppose the pending motion for preliminary approval, including by raising an argument that the discovery provided to date is an inadequate basis on which to evaluate the proposed class settlement.

For all these reasons, Ottinger's letter application dated June 10, 2020, is denied.

SO ORDERED.

_____
/s/
STEVEN M. GOLD
United States Magistrate Judge

June 30, 2020
Brooklyn, New York

---

[1] If an appropriate application is made, the Court may consider including Ottinger's contact information in the notice to be sent to the class so that absent class members interested in learning more about Luyando's concerns may do so. There is in the Court's view a significant difference between inviting absent class members to pursue more information if they are interested in doing so and suggesting to absent class members, in communications not supervised by the Court, that LLG is laboring under a conflict of interest.