UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

DAVID BUCHANAN, EVA FIGUEROA, and JAVON    :
JONES, on behalf of themselves, FLSA            :
Collective Plaintiffs, and the Class,           :
                                                :     <u>REPORT &</u>
                        Plaintiffs,             :     <u>RECOMMENDATION</u>
                                                :     18-CV-885 (FB) (SMG)
        -against-                               :
                                                :
PAY-O-MATIC CHECK CASHING CORP. and         :
THE PAY-O-MATIC CORP.,                          :
                                                :
                        Defendants.             :
                                                :
-------------------------------------------------------------------x

STEVEN M. GOLD, U.S. Magistrate Judge:

## INTRODUCTION

Plaintiffs bring this action pursuant to the Fair Labor Standards Act ("FLSA") against

defendants, who own and operate approximately 150 stores providing check cashing and other

services. Am. Compl. ¶ 10, Dkt. 11. Plaintiffs allege that defendants failed to pay overtime

wages to two subclasses of employees: store managers like plaintiff Buchanan, who were

misclassified by defendants as exempt, and hourly employees like plaintiffs Figueroa and Jones,

who were denied overtime pay due to defendants' time-shaving and refusal to compensate their

workers for time spent travelling between defendants' locations. *Id.* ¶ 20.

The parties, having reached a proposed class action settlement, now move for an Order

conditionally certifying a settlement class, granting preliminary approval of the settlement as set

forth in the Class Settlement Agreement and Release, appointing Lee Litigation Group as class

counsel, and approving the proposed notice submitted by the parties. Mot. for Prelim. Approval,

Dkt. 111. The Honorable Frederic Block has referred the parties' joint motion for preliminary

approval to me for report and recommendation.  Order dated May 14, 2020.  For the reasons

stated below, I respectfully recommend that the motion be granted in part and denied in part.

## BACKGROUND

Plaintiff Buchanan commenced this action on February 9, 2018.  Compl., Dkt.1.  An

Amended Complaint naming additional plaintiffs Eva Figueroa and Javon Jones (collectively,

"Plaintiffs") was filed on April 4, 2018.  Am. Compl., Dkt. 11.  The Plaintiffs are represented by

attorneys from the Lee Litigation Group ("LLG").

A second case against the same defendants, also alleging violations of the FLSA, was

brought as an individual action on November 28, 2018.  *See Luyando v. Pay-O-Matic Check*

*Cashing Corp. et al*, 19-CV-3571 (FB) (SMG) (E.D.N.Y.).  The plaintiff in that action, Carmen

Luyando ("Luyando" or "Intervenor"), is represented by lawyers from the Ottinger Firm

("Ottinger").

In March of 2019, Ottinger filed a pre-motion conference application on behalf of

Luyando seeking to intervene in the Buchanan action.  Ltr. dated Mar. 29, 2019, Dkt. 64.

Luyando asserted in that application that she had "learned of [a] conflict of interests" between

LLG and defendants' non-exempt employees.  *Id.* at 2.  Motion practice with respect to

representation of the putative class of plaintiffs ensued.  On March 25, 2020, Senior United

States District Judge Block issued an Order rejecting Ottinger's argument that LLG should not

be permitted to negotiate a settlement on behalf of all plaintiffs because Ottinger represented a

sub-class, and ruling that:

> (1) LLG will represent all prospective class members before notice
> is sent; and (2) if settlement negotiations fail and class notice is sent,
> the opted-in customer service representatives will be represented by
> the Ottinger Firm and the opted-in managers will be represented by
> LLG. Since notice has yet to be distributed, LLG may continue to
> negotiate a settlement on behalf of all plaintiffs.

Mem. and Order dated Mar. 25, 2020, at 2, Dkt. 107.

On April 24, 2020, LLG and counsel for defendants reported that they had finalized a class settlement agreement (the "Agreement"). Ltr. dated Apr. 24, 2020, Dkt. 109. On May 14, 2020, LLG filed a motion for preliminary approval of the agreement. Dkt. 111. Thus, the trigger for Ottinger to represent opted-in customer service representatives—the failure of settlement negotiations between defendants and LLG—was never pulled.

The original agreement proposed for approval provided for a settlement fund of $1,200,000. First Mem. in Supp. at 5, Dkt. 112. This amount was subsequently increased to $1,257,750. Pls.' Letter dated Sept. 3, 2020, at 2, Dkt. 136. During a conference held on May 15, 2020, Ottinger indicated that Luyando would oppose approval of the settlement, and I accordingly set a schedule for briefing Luyando's opposition. Min. Entry dated May 15, 2020, Dkt. 115.

As it turned out, though, Luyando elected not to object to preliminary approval of the original settlement agreement. Instead, Luyando apparently negotiated a modification to the Agreement with plaintiffs and defendants (the "Addendum"). Pls.' Ltr. dated July 17, 2020, Dkt. 130. The addendum provides that the settlement fund will be increased by $100,000, with $80,000 of the additional funds to be paid to Ottinger as legal fees, $10,000 to be paid to Luyando as a service award, and $10,000 to be allocated to class members. Addendum to Settlement Agreement dated July 16, 2020, ("Addendum") ¶ 6.2, Dkt. 130-1. Each of the parties—plaintiffs, Luyando, and defendants—now seeks approval of the agreement with the addendum.

**DISCUSSION**

I.     **Rule 23 Class Certification**

As discussed above, the parties jointly move for certification of a proposed class for settlement purposes, preliminary approval of the settlement agreement, appointment of LLG as class counsel, and approval of the notice proposed by the parties.  Notice of Mot., Dkt. 111.

A. *Legal Standard*

A party seeking certification of a class must satisfy "the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997).  The Court must also find that one of the three sets of criteria set forth in Rule 23(b) has been met.  *See id.* at 376; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Here, plaintiffs seek to certify a class under Rule 23(b)(3), which permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Plaintiffs bear the burden of establishing each of these prerequisites to certification by a preponderance of the evidence.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).  In deciding whether plaintiffs have met this burden, "the Court may examine not only the pleadings but also the evidentiary record, including any affidavits and results of discovery." *Guadagna v. Zucker*, 332 F.R.D. 86, 91 (E.D.N.Y. 2019); *see also Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982).  At the same time, a district court may accept allegations in the complaint as true for purposes of deciding a class certification motion, *see Waggoner v. Barclays*

*PLC*, 875 F.3d 79, 85 n.5 (2d Cir. 2017), and should refrain from conducting "a preliminary inquiry into the merits" of the case, *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974).

The Court's analysis of whether the relevant requirements of Rule 23 have been met must be "rigorous." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Nevertheless, the Second Circuit has emphasized that Rule 23 should be given a "liberal rather than restrictive construction." *Marisol A.*, 126 F.3d at 377 (internal quotation marks and citation omitted). "[T]o deny a class action simply because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle would destroy much of the utility of Rule 23." *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005) (internal quotation marks and citation omitted). "Therefore, it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Id.* (internal quotation marks and citation omitted); *see also Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 254 (E.D.N.Y. 2019). Moreover, pursuant to Rule 23(c)(1), "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*, 2019 WL 5204809, at *3 (E.D.N.Y. Oct. 15, 2019) (internal quotation marks and citation omitted). For purposes of settlement only, defendant does not oppose conditional certification.

B. *The Requirements of Rule 23(a)*

I address each of the requirements of Rule 23(a) in turn.

    i.   Numerosity

In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement,"

*Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), as "it is permissible for . . . court[s] to rely on reasonable inferences drawn from available facts," *Hill v. City of New York*, 2019 WL 1900503, at *5 (E.D.N.Y. Apr. 29, 2019) (internal quotation marks, alteration, and citation omitted).  Here, plaintiffs represent that there are approximately 3,200 potential class members. First Mem. in Supp. at 24.  Because the proposed class far exceeds the 40-member threshold, the numerosity requirement is satisfied.

       ii.    <u>Commonality</u>

Rule 23(a)(2) requires that there be a common contention that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Notably, the "individual circumstances of the class members may differ without precluding class certification," so long as there is "a common nucleus of operative facts or an issue that affects all members of the class." *Butto v. Collecto Inc.*, 290 F.R.D. 372, 392 (E.D.N.Y. 2013).

Here, two subclasses are proposed: one comprised of store managers who were paid on a salary basis and treated as exempt from the overtime provisions of the FLSA and NYLL, and a second comprised of non-exempt employees including customer service representatives, cashiers, and tellers.  Agreement ¶ 1.4, Dkt. 113-1; Proposed Order at 4, Dkt. 111-1.  The issue that affects all members of the first subclass is whether store managers were properly classified as exempt, and the issue that affects the second subclass is whether defendant's time-keeping practices deprived employees in this group of overtime wages they were entitled to be paid. Accordingly, commonality is satisfied.

### iii.   Typicality

The typicality requirement under Rule 23(a)(3) is "satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936–37.

Here, the factual and legal theories underlying plaintiffs' claims are the same as those of the proposed class.  More specifically, plaintiff Buchanan is a store manager who claims he was misclassified by defendants as exempt and paid a fixed weekly salary despite working more than forty hours per week.  Am. Compl. ¶¶ 28–39.  Plaintiffs Figueroa and Jones claim they worked for defendant as tellers and customer service representatives but were not paid for all of the hours they worked.  Am. Compl. ¶¶ 40–53.  These claims are typical of those that might be asserted by members of the two proposed subclasses, and the typicality requirement is accordingly satisfied.

### iv.   Adequacy of Representation

"Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks and citation omitted).

Here, there is no indication that any plaintiff has interests that are antagonistic to or at odds with those of the putative class members.  Indeed, plaintiffs seek the same relief as all other

putative class members—payment for overtime wages due and owing and related damages provided for in the FLSA and NYLL.  Furthermore, class counsel are experienced and qualified. Mr. Lee, for example, has been practicing law for more than twenty years, and devotes a substantial part of his practice to wage and hour class and collective actions.  Decl. of C. K. Lee ¶¶ 4–7, Dkt. 113.  Accordingly, the requirement of adequate of representation is satisfied.

C. *The Requirements of Rule 23(b)(3)*

As stated above, a class action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Rule requires consideration of several factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*  Generally, the predominance requirement is satisfied where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Waggoner,* 875 F.3d at 93 (internal quotation marks and citation omitted).  The superiority requirement is satisfied where "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (internal quotation marks and citation omitted).

8

Here, common factual allegations and legal theories predominate over any issues affecting only individual putative class members.  Questions such as whether store managers were assigned duties and responsibilities consistent with exempt status, and whether customer service representatives are entitled to compensation for time spent traveling between locations, are common to members of the respective subclasses.  Moreover, class adjudication in this case would be superior to individual adjudication because "the individual [c]lass [m]embers' alleged damages may be relatively small [and thus] the expense and burden of individual litigation would make it impossible for all of the [c]lass [m]embers to individually redress the alleged harm done to them."  *Moukengeshcaie*, 2019 WL 5204809, at *6.  Finally, proceeding as a class will conserve judicial resources and is more efficient for individual class members, particularly those who lack the resources or sophistication to bring their claims individually.  Therefore, Rule 23(b)(3) is satisfied.

Accordingly, class certification for purposes of settlement is appropriate in this case.

## II.      Preliminary Approval of the Class Settlement Agreement

Plaintiffs seek preliminary approval of the settlement reached by the parties.  The discussion set forth below in this Section of the Report and Recommendation applies only to the Agreement.  The Addendum is addressed separately in Section III below.

### A.  Legal Standard

The Court may approve a class action settlement only upon a finding that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  Preliminary approval is the first step in the settlement process and "requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties."  *Clark v. Ecolab, Inc.*,

2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citation omitted); *see Hernandez v. Merrill Lynch & Co.*, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012).  Final approval occurs when "notice of a hearing is given to the class members, where class members and settling parties are provided the opportunity to be heard on the question of final court approval."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016).  "Even at the preliminary approval stage, the Court's role in reviewing the proposed settlement is demanding because the adversariness of litigation is often lost after the agreement to settle."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).

Amendments to Rule 23 became effective on December 1, 2018.  "Prior to the amendments, Rule 23 did not specify standards for courts to follow when deciding whether to grant preliminary approval"; rather, "courts in the Second Circuit interpreted Rule 23 to require a determination of whether the proposed settlement fell within the range of possible final approval."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (internal quotation marks and citation omitted); *see In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (suggesting that for preliminary approval, a court need only find "probable cause to submit the [notice of settlement] to class members" (internal quotation marks and citation omitted)).  Under the new, more exacting standard required by Rule 23(e), district courts, in determining whether to grant preliminary approval of a proposed settlement, must decide whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(i–ii).

B. *Preliminary Approval Factors*

Rule 23(e)(2), as amended in 2018, requires courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Prior to 2018, Rule 23(e)(2) set forth no factors, and courts in the Second Circuit instead determined whether a proposed settlement was substantively fair by considering what have come to be known as the *Grinnell* factors, which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). The Advisory Committee Notes to the 2018 amendments indicate that the new Rule 23(e) factors were not intended to "displace any factor" under the *Grinnell* test. 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2); *see In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692. Accordingly, both sets of factors are considered below.

i.    Adequate Representation by Class Representative and Class Counsel

For the reasons set forth in Section I.B.iv, *supra*, the Court will likely find that plaintiff and class counsel have provided adequate representation to the Rule 23(b)(3) putative class. This factor accordingly weighs in favor of granting preliminary approval.

ii.    Arms-Length Negotiations After Meaningful Discovery

There is a presumption that a class action settlement is fair, reasonable, and adequate where it is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted). "Such a presumption is consistent with the 'strong judicial policy in favor of settlements, particularly in the class action context.'" *McReynolds*, 588 F.3d at 803 (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116).

Here, it appears that the parties, through experienced, capable counsel as described above, engaged in written discovery during the early stages of this litigation.  LLG represents that, in addition to interviewing the named plaintiffs, at length, they

> obtained and reviewed data from Defendants with respect to a large sample of potential class members, including the complete schedules, time records, payroll records, wage statements, and wage and hour notices for three hundred (300) Class Members (or 10% of the Class) who were employed by Defendants during the Relevant Time Period, and employment data for Plaintiffs. . . Plaintiffs' Counsel also obtained a full list of all non-exempt employees of Defendants from 2012 to August 2018 and Defendants' employment policy documents, including their employee handbook, store manual, and memorandum to employees.

First Mem. in Supp. at 17.

It further appears that the settlement was negotiated at arms length by experienced counsel.  In fact, the parties engaged in private mediation which, although not successful, no

12

doubt contributed to the parties' ability ultimately to reach an agreement. *Id.* at 2–3. Accordingly, Rule 23(e)(2)(B) weighs in favor of preliminary approval.

        iii.    <u>Adequate Relief for the Class</u>

        Rule 23(e)(2)(C) requires courts to consider whether the relief provided for the class is adequate. As noted above, there is a presumption that a settlement is adequate where, as here, parties represented by capable counsel reach an agreement after conducting negotiations at arms length. Still, in this case, this presents a close question. On the one hand, the settlement fund represents only a small percentage of what plaintiffs claim they might recover if the case proceeded to trial. Supp. Mem. in Supp. at 2, Dkt. 131. On the other hand, proceeding to trial would pose significant risks with respect to establishing both liability and damages and enforcing any judgment that might be obtained. Plaintiffs' assertions with respect to the hours they worked are based only on their own testimony, which counsel acknowledges may not be accepted at trial. *See id.* at 2–3, 15–16. Second, plaintiffs indulged unrealistic assumptions when calculating the wages they claim they should have been paid, such as assuming they took no sick leave or vacation time. *Id.* at 3. In addition, the facts plaintiffs allege in support of their contention that store managers were improperly treated as exempt employees are vigorously disputed. *Id.* at 8–9. Defendants also challenge the allegations of the hourly employee plaintiffs with respect to the hours they claim to have worked, and contend that the records maintained by a time-keeping system defendants put in place in 2015 refute plaintiffs' assertions. *Id.* at 14–15. Finally, as discussed in greater detail below, there is a serious question whether, even if plaintiffs prevailed at trial and were awarded far more than the settlement fund, the judgment could ever be enforced.

        When assessing the adequacy of relief to the class, the Court must also consider

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness
> of any proposed method of distributing relief to the class, including
> the method of processing class-member claims; (iii) the terms of any
> proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2). This inquiry overlaps with a number of *Grinnell* factors, which are also

addressed below.

### a. Costs, Risks, and Delay of Trial and Appeal

The first subfactor—the costs, risks, and delay of trial and appeal—overlaps with the

following *Grinnell* factors: (1) complexity, expense, and likely duration of the litigation; (2) the

risks of establishing liability; (3) the risks of establishing damages; and (4) the risks of

maintaining the class through the trial. *See In re Payment Card Interchange Fee & Merch. Disc.*

*Antitrust Litig.*, 330 F.R.D. at 36.

Here, as an initial matter, the parties spent two years litigating this case before reaching

the Agreement. Although the issues in the case are not particularly complex, the division of

putative class members into two subclasses, and the fact-specific analysis involved in

determining the applicability of the exemption to one of those sub-classes and the factual

disputes concerning whether members of the other in fact were not paid for overtime hours

worked, make this a substantially more complicated matter than the typical wage and hour case.

*See* First Mem. in Supp. at 18–19. Moreover, even a relatively straightforward case becomes

more complex when certified as a class action. *See Garland v. Cohen & Krassner*, 2011 WL

6010211, at *7 (E.D.N.Y. Nov. 29, 2011) (Although "[t]he factual and legal issues in this case

are not complex[, g]iven the complexity of any class action lawsuit . . . it is reasonable to assume

that absent the instant Settlement, continued litigation would have required extensive time and

expense."). Finally, LLG represents that it has reviewed financial documents indicating that

14

plaintiffs would have difficulty enforcing a judgment substantially larger than the settlement amount, Supp. Mem. of Law at 19, and defendants have submitted, under seal, an affidavit and documents corroborating their financial difficulties, Aff. Of James L. Shreero, Dkt. 135. Thus, the *Grinnell* factors involving complexity, expense, and likely duration of the litigation, and the risks of proceeding to trial, all weigh in favor of preliminary approval.

### b. Effectiveness of the Proposed Method of Distributing Relief

The Agreement provides for the appointment of an administrator to distribute the settlement proceeds to members of the class. Agreement ¶ 2.3. The defendants operate a substantial corporation, and it is reasonable to assume that records containing the identities and addresses of its current and former employees may be easily located and produced. The Agreement affords class members ample time to cash their checks, and provides that uncashed checks will be attributed largely to a second distribution or *cy pres* award. *Id.* ¶ 3.1(F). Therefore, I find this subfactor weighs in favor of granting preliminary approval.

### c. The Terms of Any Proposed Award of Attorneys' Fees

Class counsel represent that they will seek no more than $400,000 in attorneys' fees. Agreement ¶ 3.2. This is less than one third of the settlement fund. Moreover, any attorneys' fees will be paid only after the Court grants final approval of the settlement, including any fee award. *Id.* Although plaintiffs' counsel has not yet submitted time records for the Court's review, I preliminarily conclude that the proposed award of attorneys' fees seems reasonable in light of the activity reflected in the Court's docket for this action and the size of the settlement fund. Accordingly, the amount of the fees sought does not weigh against approval at this preliminary stage.

### d.  The Terms of Any Proposed Service Award

The settlement agreement provides for service awards to the three named plaintiffs totaling $40.000.  Agreement ¶ 3.1(B).  "It is within the court's discretion to determine whether a named plaintiff should receive an additional service or incentive award."  *Gay v. Tri-Wire Eng'g Sols., Inc.*, 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014).  An "incentive" or "service" award is not uncommon in class action cases and is "meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit."  *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *15 (S.D.N.Y. May 30, 2013) (internal quotation marks and citation omitted).  "Courts look for the existence of special circumstances when determining whether an award is justified and, if so, in what amount."  *Torres v. Toback, Bernstein & Reiss LLP*, 2014 WL 1330957, at *3 (E.D.N.Y. Mar. 31, 2014) (internal quotation marks and citation omitted).  Such special circumstances include:

> the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.

*Id.* (internal citation omitted); *see Babcock v. C. Tech Collections, Inc.*, 2017 WL 1155767, at *9 (E.D.N.Y. Mar. 27, 2017).

The parties have not submitted sufficient information to judge whether the three named plaintiffs have incurred significant risk by being named in this case or devoted substantial time to litigating it.  The amount of the service awards relative to the settlement fund, however, suggests that the question of whether the Court will finally approve of the service awards requested is of

minor concern with respect to the overall adequacy of the relief for the class.  Accordingly, I conclude that the service award amounts in the Agreement pose no bar to preliminary approval.

### e.   Any Agreement Required to be Identified under Rule 23(e)(3)

There is no agreement under Rule 23(e)(3) for the Court to review in this case.  However, it bears noting that the release set forth in section 4.1 of the Agreement is limited to wage and hour claims.  "The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the identical factual predicate as the settled conduct."  *Wal-Mart Stores, Inc.*, 396 F.3d at 107 (internal quotation marks and citation omitted).  Nevertheless, "[c]ourts have denied preliminary approval where releases from liability are deemed to be overly broad."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 43. Here, the limited scope of the release weighs in favor of granting preliminary approval.

### iv.   Equitable Treatment of Class Members Relative to One Another

Questions to consider under this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

As noted above, the Agreement contemplates certification of two separate subclasses. Agreement ¶ 1.4.  Nevertheless, the settlement proceeds, after certain deductions, are to be distributed to class members without regard to which subclass they belong, pro rata, based upon the number of weeks they were employed by defendants.  *Id.* ¶ 3.1(A).  During a conference held on August 13, 2020, I asked counsel to explain why class members should receive the same share of the settlement fund, per week, without regard to the subclass of which they are

members.  Tr. of Aug. 13, 2020, ("Tr.") at 5:19–7:8, Dkt. 133.  At that conference and in a supplemental submission, LLG explained that the store manager subclass is quite small compared to the subclass of hourly employees, and that counsel viewed the litigation risks faced by each subclass to be comparable.  Tr. at 7:1-6; Pls.' Letter dated Sept. 3, 2020, at 2.

Having since considered the strength of each subclass's legal arguments, I find that counsel's reasoning warrants an equal allocation.  Though the store manager subclass is alleged to have worked a greater number of off-the-clock hours, and at a higher rate, than the hourly employee subclass, it strikes the Court that the store managers confront a greater litigation risk. *Id.* at 2–3.  If the store managers are found to be exempt, they will recover nothing, whereas if the hourly employees establish that they worked some uncompensated overtime but less than they claim, they will nevertheless recover damages, albeit in a lesser amount than they hoped, as well as their attorney's fees and costs.  A fixed rate of compensation per week worked also has the benefit of simplicity.  *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity").  For these reasons, I conclude that the Agreement treats class members equitably relative to each other.

In sum, having considered both the Rule 23(e)(2) factors and the *Grinnell* factors, I respectfully recommend that preliminary approval of the Agreement be granted because the Court, upon final approval, will likely find that the Settlement Agreement is fair, reasonable, and adequate.

### III.    The Addendum

As discussed above, Intervenor Luyando at first anticipated filing objections to the settlement, but ultimately negotiated an Addendum to the Agreement.  The Addendum provides for an increase in the settlement fund of $100,000, with $80,000 of that amount to be paid to Ottinger, $10,000 to Luyando, and $10,000 to members of the class.  Addendum ¶ 6.2.  The additional amount to be paid to the class is less than one percent of the pre-Addendum settlement fund amount.  Moreover, if the Addendum were approved, the total attorneys' fees sought— $480,000—would exceed one-third of the settlement fund.

This Court raised its concerns over the disparity between the amounts to be paid to Ottinger and Luyando on the one hand, and the members of the class on the other, during the conference held on August 13, 2020.  Tr. at 12:1-17.  The only justification provided, however, was that the Ottinger firm had devoted substantial time to litigating the case, and that $10,000 was a good result for Intervenor Luyando.  Tr. at 12:22–13:25.  Not entirely satisfied with that explanation, the Court asked that Luyando consider settling her claim, if she sought to do so, in a separate agreement that could be considered pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  Tr. at 14:1-6.  I did so because, while Ottinger argued that the Addendum was fair and reasonable with respect to Luyando and itself, it did not explain why it was fair to the class.  The parties, however, were apparently not able to reach agreement on that approach.  Pls.' Ltr. dated Sept. 3, 2020, at 1.

Accordingly, and for the reasons stated above, I respectfully recommend that the Agreement be approved but that the Addendum be rejected.

## IV.    The Proposed Notice of Settlement

"Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *American Med. Ass'n v. United Healthcare Corp.*, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009). Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "[U]pon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)," the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see Eisen*, 417 U.S. at 176.

A class notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc.*, 396 F.3d at 113.

Here, the Notice will be mailed to each potential member of the class. Agreement ¶¶ 1.4, 2.4. Moreover, the substance of the Notice satisfies each of the requirements under Rule 23(c)(2)(B), with one exception. The Notice does not appear to alert class members of their right

to appear through an attorney of their choice.  *See* Notice ¶ 13, Dkt. 113-2.  Assuming the Notice

is amended to correct this deficiency, I respectfully recommend that it be approved.

### CONCLUSION

For the reasons stated above, I respectfully recommend that the Court certify the class as

defined above and preliminary approve the Agreement, but not the Addendum.  I further

respectfully recommend that the Court order that LLG be appointed as class counsel and that the

Proposed Notice, if amended to alert class members of their right to appear through an attorney

of their choice, be approved and distributed to the class.

Any objections to the recommendations made in this Report must be made within

fourteen days after filing of this Report and Recommendation and, in any event, on or before

October 22.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely

objections may waive the right to appeal the District Court's order.  *See Small v. Sec'y of Health*

*& Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day

limit).

                                                    _____/s/_____

                                                    Steven M. Gold
                                                    United States Magistrate Judge

Brooklyn, New York
October 8, 2020

U:\#ECC 2019-2020\Buchanan 18-885 - Final.docx