## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

DAVID BUCHANAN, EVA FIGUEROA, and
JAVON JONES, *on behalf of themselves, FLSA*
*Collective Plaintiffs and the Class*,

                               Plaintiffs,

      v.

PAY-O-MATIC CHECK CASHING CORP. and
THE PAY-O-MATIC CORP.,

                               Defendants.

Case No.: 18-CV-885

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
## MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS,
## FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT
## AND APPROVAL OF THE FLSA SETTLEMENT

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................1

    I. Procedural History ..............................................................................................1

    II. Overview of Investigation and Discovery ..............................................................3

    III. Settlement Negotiations, Further Discovery & Preliminary Approval ..................8

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION ..................9

ARGUMENT ...............................................................................................................10

    I. The Settlement Class Meets the Legal Standard for Class Certification ................10

        A. Numerosity.................................................................................................11

        B. Commonality...............................................................................................11

        C. Typicality ..................................................................................................12

        D. Adequacy of the Named Plaintiffs ................................................................13

        E. Certification Is Proper Under Rule 23(b)(3) ...................................................14

            1. Common Questions Predominate ...............................................................14

            2. A Class Action Is a Superior Mechanism ...................................................15

    II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects ..................................................................................16

        A. The Proposed Settlement Is Substantively Fair ...............................................17

            1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ............................................................................................18

            2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ............18

            3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3) .......................................................19

4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ..............................................................................................20

5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ........................................................................21

6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) ...............................................................................................21

7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...................23

B. The Proposed Settlement is Procedurally Fair .................................................24

1. The Settlement Was the Result of Arm's Length Negotiations.................24

2. The Distribution of Class Notice Satisfied Due Process ...........................26

III. Approval of the FLSA Settlement Is Appropriate Under Federal Law ...............27

CONCLUSION ...........................................................................................................28

# TABLE OF AUTHORITIES

CASES                                                                                          Page(s)

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...............................................14, 16

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) .......27

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................18, 19, 20, 22, 24

*Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640
N.Y.S.2d 845, 847 (1996)..............................................................................................27

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969)............................................................27

*Cagan v. Anchor Sav. Bank FSB*,
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) .........................................24

*Campos v. Goode*,
No. 10 Civ. 224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) ......................................13

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)............................................................................................17

*Clark v. Ecolab, Inc.*,
Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009
WL 6615729 (S.D.N.Y. November 27, 2009) ..................................................................12

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ............................11

*In re Cendant Corp. Litig.*, 264 F .3d 243, 263 ........................................................ passim

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)................................16, 17, 18, 25

*deMunecas v. Bold Food, LLC*,
No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ..............14, 20, 25, 26, 28

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)...........................................10

*Diaz v. E. Locating Serv., Inc.*,
No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ......14, 16, 17, 20, 25, 28

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011).......12, 13

*Dziennik v. Sealift, Inc.*,

No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) .....................................14

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................25

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ...........................................11, 12, 13, 15, 16, 20, 22, 24

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ........................................................11

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ......................................24

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).......................................17

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) ...........................................15, 27

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...............................................16

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)................................................28

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) ...............................................20

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008)............26

*In re Prudential Securities, Inc.*, 164 F.R.D. 362 (S.D.N.Y 1996)...................................27

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986)............12

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ....................28

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .....................18

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .............................................11, 12, 20

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) ...........................19

*McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005) ......................................15

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ................................28

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...............................13, 14

*Newman v. Stein*, 464 F .2d 689, 693 (2d Cir. 1972) .......................................................24

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......................24

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y. 1997) ........................20

*Prasker v. Asia Five Eight LLC,*
No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) .........................................20

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) .....................................................................................11

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
No. 94 Civ. 5587. 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ..................................18

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993).............................................................13

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ........................................14

*Spann v. AOL Time Warner, Inc.*,
No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) .....................................17

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ..................................25

*Torres v. Gristede's Corp.*,
No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. September 29, 2006) ...........................15

*Toure v. Cent. Parking Sys.*,
No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ..................................13

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ...................................20

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir.2001)...............................................................................14, 15, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)..........................................................................16, 17, 25, 26

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)...............................19

*Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988)........................................27

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) ............................................................................... passim

Fed. R. Civ. P. 23(b)(3).............................................................................. passim

v

Fed. R. Civ. P. 23(e)(2) ......................................................................................................16

**INTRODUCTION**

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval"). For purposes of settlement only, Defendants do not oppose this motion. Other than for settlement purposes, Defendants do not concede in any way that class or collective action certification is appropriate in this case. The parties' $1,257,750 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiffs seek an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement (the "Settlement Agreement"); and (3) approving the FLSA Settlement.

On February 24, 2021, the Court took the first step in the settlement approval process by granting preliminary approval and directing that notice be mailed to class members. Docket No. 139. The members of the class have been notified of the terms of the settlement and their right to opt out of, or object to, it. For the reasons stated below, the Court should grant final approval.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      Procedural History**

On February 9, 2018, Plaintiff David Buchanan filed the instant lawsuit seeking to bring class and collective action claims against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The Complaint was amended on April 4, 2018 to incorporate the claims of plaintiffs Javon Jones and Eva Figueroa. The Amended Complaint sets forth the Plaintiffs' respective claims for unpaid regular and overtime wages on behalf of Plaintiff Buchanan and other similarly situated Store Manager employees who were paid on a fixed salary and

1

allegedly misclassified as "exempt", as well as claims for regular and unpaid wages on behalf of Plaintiffs Figueroa, James, and other hourly employees, due to Defendants' alleged policy of time-shaving. The Amended Complaint further alleged that Defendants failed to provide employees with accurate wage statements and wage notices. Plaintiffs sought to recover, on behalf of themselves and others they claimed were similarly situated, unpaid regular and overtime wages due to their misclassification as "exempt", and unpaid wages and overtime due to time shaving, liquidated damages and penalties, injunctive relief and attorneys' fees and costs.

On July 23, 2018, following Plaintiffs' fully briefed motion for conditional collective certification (which included detailed declarations submitted by each of the three Plaintiffs) and oral argument, the Court granted Plaintiffs' motion to conditionally certify this case as a collective action as to all Pay-O-Matic misclassified managers and hourly employees across the approximately 150 Pay-O-Matic store locations. Following the success of Plaintiffs' conditional collective certification motion, the parties agreed to attempt resolution of this case on a class-wide basis through private mediation. Prior to the agreement to mediate, the Parties had several discussions and, ultimately letter-briefed various issues relating to the appropriate scope of putative class discovery. Once the Parties agreed to attempt mediation, they sought and obtained a stay of proceedings from the Court, thereby postponing dissemination of notice of the collective action until after the Parties' mediation. The Parties also reached agreement on a protocol for pre-mediation discovery, through which Pay-O-Matic produced voluminous, detailed information and documents (including time and pay records) pertaining to 300 members in both putative classes. The mediation took place on January 10, 2019 with Carol A. Wittenberg, an experienced mediator of JAMS. Unfortunately, the mediation was not successful.

After the mediation, there were several additional disputes between the parties, including motion practice with an intervenor, Carmen Luyando (the "Intervenor"), who was allowed to join the matter in May 2019. Prior to the dissemination of collective notices to potential FLSA claimants pursuant to 29 U.S.C. § 216(b), settlement discussions resumed in about June 2019. In or about early July 2019, the parties agreed upon a framework for a possible agreement in principle for a class settlement after many additional post-mediation settlement discussions. On July 10, 2019, the Parties filed letter motions requesting a further stay of the collective action notice to complete a settlement. Intervenor opposed, and argued Plaintiffs' counsel was not able to negotiate on behalf of the putative class. After the Court issued an Order (Doc. No. 107) addressing those motions and confirming Plaintiffs' counsel's ability to negotiate a class settlement, the Parties finalized the terms of the proposed class settlement and executed the Settlement Agreement on April 24, 2020. The Settlement Agreement globally resolves all claims of both the Store Managers Subclass and the CSR Subclass (as defined in the Settlement Agreement).

## II.    Overview of Investigation and Discovery

Prior to their scheduled January 10, 2019 mediation with mediator Carol A. Wittenberg, the Parties agreed that Defendants would produce the following material to enable Plaintiffs' counsel to compile a comprehensive class-damages model, and to ensure that any eventual settlement met the requirements for fairness in regards to percentage recovery analysis: (i) a complete list of all non-exempt employees employed by Defendants between 2012 and August 2018, identified by their job titles, classifications, and employment dates ("Initial Class List") and (ii) employment records for 300 employees (10% of the expected class size) chosen at random by Plaintiffs' Counsel from the Initial Class List, which would include their payroll records, time

records, wage statements, and wage and hour notices. On August 10, 2018, the Parties informed the Court of their intention to exchange such discovery. During the weeks that followed, Plaintiffs' Counsel conducted a rigorous analysis of the documents produced in order to calculate the alleged damages owed to Plaintiffs and a class of similarly situated employees. Based on the discovery produced by Defendants both prior to and in connection with mediation, as well as Plaintiff's Counsel's interviews with Plaintiffs concerning the claims in the case, Plaintiffs' Counsel was able to accurately assess the merits of Plaintiffs' claims, the likelihood of class or collective action certification, and potential damages on both an individualized and class-wide basis. After investigating the claims of the Plaintiff and the Class, in Plaintiff's and Class Counsel's view, it became apparent that certain claims carried significant risk, may be defeated, or at most, significantly weakened, for the following reasons:

(I)     Plaintiffs claim that Defendants misclassified all store managers who were paid on a fixed-salary basis before November 2016 as "overtime exempt," leading to unpaid overtime wages for all such Store Manager Subclass members. Plaintiffs claim that the Store Manager Subclass members were not paid for the overtime work they performed even though they were regularly required to perform tasks that were typical of non-exempt employees (who would have been paid an overtime premium). This claim is risky because Plaintiffs and Defendants disagree on the importance of several key facts and the law.  Defendants are prepared to demonstrate that not all Store Managers were classified as exempt.  Rather, Pay-O-Matic classified some Store Managers as nonexempt, based on the individualized circumstances of the stores they managed. In addition, as of November 30, 2016, Defendants classified all store managers who were being paid on a fixed-salary basis as "non-exempt, hourly employees." Plaintiffs will argue that Defendants' decision to change its classification of such employees from exempt to non-exempt

is evidence that Defendants had unlawfully misclassified the Store Manager Subclass members as exempt previously. However, Defendants will maintain that the decision to reclassify such employees as non-exempt was made in anticipation of a Department of Labor rule that had been set to take effect on December 1, 2016, which would have required Defendants to substantially increase the salary levels of exempt employees to maintain exempt status. If Defendants were able to prove that their decision to reclassify the Store Manager Subclass members was unrelated to the notion that such employees had been previously *mis*classified, or that the Store Manager Subclass members did not perform the same duties as non-exempt employees, then Plaintiffs would not prevail on this claim and the claims of the Store Manager Subclass would be reduced to their Wage Theft Protection Act ("WTPA") claims. A reduction of this subclass' claims to their WTPA claims would be highly risky for the reasons set forth in Section 4(ii) below.

(II) Plaintiffs and CSR Subclass members' time shaving claim is highly risky as a review of Defendants' discovery production reflects that employees' time was regularly tracked for the duration of the Relevant Time Period and the claim itself is heavily reliant on testimonial evidence. Although Plaintiffs contend that documents produced by Defendants in advance of the January 10, 2019 mediation suggest that Defendants *may have* deducted 45 minutes for breaks longer than 30 minutes (whether it was 31 minutes or 43 minutes), Defendants deny Plaintiffs' contentions. Moreover, the documents do *not* prove any of Plaintiffs' other time shaving claims, such as their claim that they were required to perform uncompensated work at the end of their shift, or their claim that Defendants would regularly require them to work off-the-clock during their lunch breaks. Such claims have only been substantiated by the anecdotal recollections of Plaintiffs. Thus, this claim becomes a factual dispute between the Class and Defendants.

(III)     Plaintiffs and Class Members also brought statutory claims with allegations that Defendants failed to provide proper wage notices and wage statements. However, under the Wage Theft Prevention Act, there are no statutory penalties for a failure to provide proper wage statements or wage notices if no other wage and hour violations existed, i.e., failure to pay the proper regular and overtime wages. If the testimony of Defendants' witnesses indicated that CSR Subclass members were not required to work during their lunch breaks or after their shift had ended and they had clocked out, or that Store Manager Subclass members did not perform duties that are more typical of non-exempt employees for any substantial period of time during each workday, then the ancillary claims under the Wage Theft Prevention Act also would not prevail. While, notwithstanding the foregoing, Plaintiffs believe that they could ultimately establish Defendants' liability, to do so would require significant factual development.

(IV)     In addition to the risks associated with the Plaintiffs' and Class Members' claims, there is a significant economic risk brought on by the COVID-19 Pandemic and the resulting effect on the revenues and liquidity of Defendants' business.  In this unprecedented time for the United States and the World, it is hard to imagine a riskier time to reach a settlement.  Most notably, "the COVID-19 Pandemic continues to force retail stores to close, signaling an unprecedented disruption of commerce." Forbes, "The Impact of COVID-19 on U.S. Brands and Retailers", Jason Goldsey, March 28, 2020.  "It is very possible the U.S. will emerge from the pandemic in a recession.  Morgan Stanley and Goldman Sachs Group have both warned of a record plunge in output during the second quarter that could lead to a deeper global recession." Id.  Yet, despite this bleak economic outlook, and against all odds, Plaintiffs' Counsel was able to reach a favorable resolution that will serve to provide a real economic benefit to Class Members.  In addition, the Settlement Agreement provides Pay-O-Matic's contribution to the settlement fund over a period

of time, ensuring the company will be able to satisfy its funding obligations. Although the settlement provides for a long installment plan, after the initial round of checks are distributed, a second distribution to those individuals who deposited their first round checks will be made to the extent practicable. If not, any unclaimed funds will be donated as a *cy pres* to an organization devoted to job training for disabled individuals. So here, not only is there no reversion and Defendants will be paying the full $1,257,750, Class Members will be getting not one but potentially two payments.

Plaintiffs' counsel performed damages calculations based on the payroll and employment records produced by Defendants during discovery and the plaintiffs' testimony, and believe the total potential class damages are estimated to be several million dollars. However, as mentioned, there are significant risks in this case, including that Plaintiffs could lose on their claims and receive nothing if the Court were to determine that the Defendants' classification of the Store Manager Class and payment of wages to the Store Manager and the CSR Class Members were in fact, correct. The $1,257,750 settlement is, therefore, fair and reasonable in light of Defendants' available factual and legal defenses should litigation proceed. Moreover, as there is no reversion and a contemplated second distribution to Class Members (of uncashed funds), individuals will be receiving a larger percentage recovery on their individual claims than if there was just one distribution with a reverter. Upon the Court's approval, each Class Member who has not opted out will receive a payment that is proportional to the duration of his or her employment during the class period. Thus, for instance, a Class Member who worked for two years will receive a considerably larger share than a Class Member who worked for six months.

While, notwithstanding the foregoing, Plaintiffs believe that they could ultimately establish Defendants' liability on some of their claims; to do so would require significant factual

development. Plaintiffs' counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of final approval.

## III.    Settlement Negotiations, Further Discovery & Preliminary Approval

The Parties engaged in extensive negotiations. The formal parameters of the settlement were the result of contentious negotiations. In addition to numerous informal telephone conferences for settlement, the parties also engaged in an all-day private mediation with Carol Wittenberg, Esq., of JAMS on January 10, 2019. However, the mediation was unsuccessful, and the Parties did not reach a settlement in principle. Although the parties continued to discuss class-wide resolution, the negotiation process was complicated on March 29, 2019, when Ms. Carmen Luyando, the plaintiff in the action styled *Luyando v. Pay-O-Matic Check Cashing Corp., et al.*, S.D.N.Y. 18-cv-11114, filed a letter requesting a Pre-Motion Conference and the Court's permission to file a Motion to Intervene in the Buchanan action.[1] The intervening months were spent engaged in motion practice relating to the intervention. By Order on May 24, 2019, Ms. Luyando was permitted to intervene. After Intervenor joined this action, she was invited but declined to participate in settlement discussions. In or about early July 2019, after several additional settlement discussions between counsel for Plaintiffs and counsel for Defendants, and before any notices were mailed to potential FLSA opt-in claimants pursuant to Section 216(b), the Parties successfully completed negotiations on the principal terms of a class-wide settlement to globally resolve all claims of both the Store Managers Subclass and the CSR Subclass (as defined in the Settlement Agreement).

---

[1] Luyando's lawsuit subsequently was transferred to the E.D.N.Y., 19-cv-3571, as related to the instant action.

Because of the uncertainty of Plaintiffs' legal position and the uncertainty of obtaining class certification and maintaining class certification through trial, the Parties agreed to the settlement of $1,257,750.00. Class Counsel prepared and submitted a preliminary approval motion, as well as several supplements, as requested by the Court, which, after amendments were made to the proposed Class Notice, was approved by the Court on February 24, 2021.

### SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

| Category | Settlement Term | Remarks |
|---|---|---|
| Gross Settlement Fund | $1,257,750.00 | The Fund covers all of Defendants' obligations under the settlement, including but not limited to any attorneys' fees and costs, administration fees, class members' awards, and service awards to the Plaintiffs. As to the treatment of employer tax obligations, see below. |
| Attorneys' Fees | Approximately 1/3 of the Fund, $400,000 | Class Counsel has filed a motion for approval of attorneys' fees and reimbursement of expenses simultaneously with this motion. |
| Costs & Expenses | $3,583.00 | Filing fee, service fees, depositions, and Mediation fees. |
| Administration Fees | $49,578.00 | Admin. Fees are comparable to admin. fees usually paid to the settlement administrator in similar class settlement administrations with similar class sizes. |
| Service Awards | $40,000 in total | One $20,000 service award to David Buchanan, one $10,000 service award to Eva Figueroa, and one $10,000 service award to Javon Jones, for their assistance to Class Counsel, service on behalf of the Class, and pursuant to the Parties' Settlement Agreement and Release. Class Counsel has filed a motion for approval of these service awards simultaneously with this motion. |
| Reversion | Is there any reversion? | NO. There is no reversion. Defendants will pay the full settlement amount of $1,257,750.00. All class members who do not opt-out will be mailed a check. Any unclaimed amounts remaining 120 days after initial distribution of settlement checks shall be applied to reimburse Defendants for the employer share of FICA for the first distribution of settlement checks, with the remainder to be applied to a second distribution (including the employer share of FICA and costs of such distribution). If the amount remaining renders a second distribution impractical, then the remainder will be applied to a *cy pres* charitable |

| | | donation to an organization devoted to job training for disabled individuals, to be jointly determined by the Parties. |
|---|---|---|
| Claims Made / Opt-out basis | Are class members required to file a claim form to receive a payment? | NO. This is not a claims-made settlement, meaning that class members are not required to submit a claim form to receive a payment. All class members who do not opt-out will be mailed a check. |
| Allocation Formula | How will the individual settlement allocations be calculated? | The allocation to Class Members in both subclasses will be based on and proportional to weeks worked within the Relevant Time Period. |
| Release | What is the scope of the release? | Every class member who does not opt out will release Defendants from all New York wage and hour claims. Every class member who cashes his or her check will release Defendants from Fair Labor Standards Act claims. |

# ARGUMENT

## I. The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On February 24, 2021, the Court preliminarily certified the settlement class. The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiffs respectfully request that the Court certify the following class for purposes of effectuating the settlement: Named Plaintiffs and two subclasses of individuals – (i) store managers who were paid on a salary basis and who were treated as exempt until November 2016, as well as store managers treated as non-exempt before and after November 16 ("Store Manager Subclass") and (ii) non-exempt tellers, cashiers, service associates, and customer service representatives, as well as persons in the payroll designation of assistant manager ("CSR Subclass") – who were employed by Defendants at any time between February 9, 2012 and July 21, 2019, and who do not opt out of the litigation. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a)

requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

## A. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs clearly satisfy the numerosity requirement as there are 3,346 class members who have not opted out of the settlement.

## B. Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181

(W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. In Plaintiffs' view, the required relationship between the claims of Plaintiffs and those of the class clearly exists here.

This case involves numerous common issues. Plaintiffs and the Rule 23 class members bring common claims involving allegations that Defendants failed to pay Class Members their proper overtime wages due to their alleged misclassification as overtime exempt. Plaintiffs also alleges that Defendants failed to provide all Class Members with wage statements and wage notices in conformity with New York law. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at *2 (S.D.N.Y. January 21, 2011) (Rule 23(a)(2) satisfied where common issues included whether defendants violated wage and hour laws by failing to pay overtime and spread of hours pay, making deductions from plaintiff's and class members' pay, and failing to keep accurate records of time worked); *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729, at *3 (S.D.N.Y. November 27, 2009) (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

## C. Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be

identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Plaintiffs and the Rule 23 Class Members performed the same or similar job duties as employees of Defendants in New York City at any time during the Class Period. Plaintiffs make the same allegations regarding unpaid overtime wages. Plaintiffs and Class members further allege they were not provided proper wage notices and proper wage statements as required under the NYLL. Because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiffs satisfy the typicality requirement. *See Dorn v. Eddington Sec., Inc.*, 2011 WL 382200, at *2 ("Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiff's claims for overtime pay, spread of hours pay, and unlawful deductions arise from the same factual and legal circumstances that form the bases of the class members' claims."); *Clark*, 2009 WL 6615729, at *4; *Frank*, 228 F.R.D. at 182.

**D. Adequacy of the Named Plaintiffs**

Named Plaintiffs are adequate class representatives. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *see also Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahon v.*

*Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiffs satisfy the adequacy requirement because there is no evidence that Plaintiffs and class members' interests are at odds – on the contrary, Plaintiffs' interests are clearly aligned with the interests of the class. *See Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (finding adequacy requirement met where plaintiffs' interests were not antagonistic or at odds with those of class members); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *2 (S.D.N.Y. Aug. 23, 2010) (same); *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *2 (same).

**E. Certification Is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

**1. Common Questions Predominate.**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136

(2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, class members' common factual allegations and common legal theory – that all class members were subjected to the same unlawful policies, and failed to receive proper wage statements and notices – predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiffs therefore satisfy Rule 23(b)(3).

### 2. A Class Action Is a Superior Mechanism.

Plaintiffs also satisfy the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring,

or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.") Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted). 1023 (9th Cir. 1998); *Diaz*, 2010 WL 5507912, at *3. Plaintiffs and class members have limited financial resources with which to prosecute individual actions. Here, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

## II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato*

*v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"). When, as here, "a settlement is negotiated prior to class certification…it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5. Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.[2]

## A. The Proposed Settlement Is Substantively Fair.

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible

---

[2] Defendants deny Plaintiffs' allegations and assert that they complied with all applicable laws and regulations at all times.

recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

## 1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with 3,350 putative class members with fact-intensive claims under both federal and state law. A complicated fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner, weighing in favor of final approval.

## 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, an experienced administration company, RUST Consulting Inc., mailed the Court-approved notices ("Notices") of the class and collective action and settlement to all the class members for whom Defendants

had provided an address, and attempted to locate an address or phone number for the remaining class members whose addresses had not been kept in Defendants' records. The Notices explicitly informed class members of their rights and the procedures to participate in the NYLL and FLSA settlements. After receipt of the Notice, no class members have objected to the settlement, and four class members, have timely requested exclusion from the settlement.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).

The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted). The parties' discovery here meets this standard. Class Counsel conducted in-depth interviews with the Plaintiffs to determine the hours they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims. Plaintiffs' Counsel obtained substantial amounts of data with respect to a large sample of potential class members, including the complete schedules, time records, payroll records, wage statements, and wage and hour notices for three hundred (300) Class Members (or 10% of the Class) who were employed by Defendants during the Relevant Time Period, and employment data for Plaintiffs. Plaintiffs' Counsel also obtained a full list of all non-exempt employees of Defendants from 2012 to August 2018 and Defendants' employment policy documents, including their employee

handbook, store manual, and memorandum to employees. Therefore, this factor favors preliminary approval.

Following informal settlement discussions between the Parties, on April 24, 2020, the parties executed a settlement agreement, the terms of which were reached during the weeks that followed their formal, private, class-wide mediation held on January 10, 2019, overseen by Carol Wittenberg, Esq. Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Diaz*, 2010 WL 5507912, at *5; *deMunecas*, 2010 WL 3322580, at *5 (approving settlement where plaintiffs had obtained discovery through an informal exchange of information and engaged in mediation); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *5 (S.D.N.Y. Jan. 6, 2010) (same). Therefore, this factor also weighs in favor of final approval.

**4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiffs believes their case is strong, it is not without risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v.*

*Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted). A trial on the merits would involve significant risk, as detailed in Section II, "Overview of Investigation and Discovery", *supra.*

Plaintiffs' counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of approval.

**5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present, particularly in light of the *Dukes* and *Comcast* decisions. Further, Defendants may argue on a decertification motion that individual questions preclude class certification. The claims at issue are vulnerable to a highly individualized analysis on a person-by-person basis, such as which, if any, class members were required to perform non-tipped tasks and how often, what their primary language is, and what their individual understanding was regarding the content of the wage notices and wage statements provided by Defendants. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

**6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7).**

It is unlikely that Defendants would be able to withstand a greater judgment than that which would result from the $1,257,750.00 settlement. One indicia of this is that Plaintiffs were forced to agree to an installment plan that concludes in March 2022. Beyond this, Plaintiffs have recently examined some of Defendants' financial records, which revealed high operating costs and high debt-to-equity ratios. Defendants net income at December 31, 2019 was less than half that at the

same time the previous year. These problems have been exacerbated by the Covid-19 pandemic and the ensuing lockdowns and economic turmoil. The working-class, low-income individuals who are most likely to stay clear of traditional banking and instead rely on Pay-O-Matic services also are the people who have been hardest hit by the economic disruptions of recent months. The less money they have, the less they need Defendants' financial services. The fact that there are fewer (and smaller) checks out there to cash unquestionably has serious repercussions for a check cashing business. All financial indicators demonstrate severe financial distress as a result of the pandemic's economic effects, with potential breach of financial covenants that would trigger debt service obligations. Net income figures have declined by 75%, severely impacting operations and fixed charge ratio requirements. Defendants renegotiated previously existing debt obligations in anticipation of the settlement of this matter structured, as it is, to be paid out over time. No one can predict how the economic situation will evolve (or devolve) in the months and years to come, both because macroeconomic trends are inherently difficult to predict and because we do not know whether, and the extent to which, the New York City area will suffer from another wave of the pandemic. Given this uncertainty, it is unlikely that the Class would ever see more than a $1,257,750.00 settlement fund even if Plaintiffs imprudently refused to compromise and fought on.

In view of the current COVID-19 business environment, the Parties spent approximately five (5) weeks in March and April 2020 engaged in constant negotiations regarding a payment plan. However, even if Defendants were able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)). Here, the Settlement Agreement provides

Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably several years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages. Therefore, Defendants' inability to withstand a greater judgment weighs in favor of the fairness of the Settlement.[3]

**7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The $1,257,750.00 settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. Each class member who does not opt-out of the settlement will receive a payment. The highest individual allocation amount is $864.54, and the average settlement payment will be $183.71. Given the inherent risks of litigation discussed above, in Plaintiffs' counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims and survived an appeal due to Defendants' available defenses and current financial situation.

Considering the current market risks caused by the coronavirus, and the significant risks of litigation and maintaining class certification described above, it is likely that the judgment, if any, after trial will be much less than the agreed-upon settlement amount. Here, on a gross, per capita basis, the per person award would be approximately $375 to each Class Member, before fees and expenses are deducted, without the class members having to do anything. This settlement amount is fair and reasonable in light of the defenses available to Defendants and the likelihood that

---

[3] Because Plaintiffs received Defendants' information on a confidential basis, they cannot delve into the financial details in this brief. But if the Court requires additional information concerning Defendants' financial condition and inability to weather a greater judgment, the parties can submit such information in camera or under seal.

ongoing litigation would, at best, result in a marginal benefit for Plaintiffs and Class Members considering the delay, additional expenses, and stress such litigation would entail.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

**B. The Proposed Settlement Is Procedurally Fair.**

**1. The Settlement Was the Result of Arm's Length Negotiation**

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations, and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Diaz*, 2010 WL 5507912, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator); *deMunecas*, 2010 WL 3322580, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the parties, including an all-day mediation with Carol Wittenberg, Esq. of JAMS on January 10, 2019. Class Counsel spent significant effort to achieve the $1,257,750.00 settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. Through discovery, Class Counsel obtained, reviewed, and analyzed with respect to a large sample of potential class members, including the complete schedules, time records, payroll records, wage statements, and wage and hour notices for three hundred (300) Class Members (or 10% of the Class) who were employed by Defendants during the Relevant Time Period, and employment data

for Plaintiffs. Plaintiffs' Counsel also obtained a full list of all non-exempt employees of Defendants from 2012 to August 2018 and Defendants' employment policy documents, including their employee handbook, store manual, and memorandum to employees. Therefore, this factor favors preliminary approval. This comprehensive discovery enabled Class Counsel to perform class-wide damage calculations.

After several more months of litigation and negotiations following mediation, the parties reached and executed a detailed final settlement agreement. Lee Decl. at ¶ 13.  At all times during the settlement process, the parties negotiated on an arm's-length basis. Lee Dec. at ¶14. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *deMunecas*, 2010 WL 3322580, at *4.

### 2. The Distribution of Class Notice Satisfied Due Process

As 3,300 of the 3,350 Class Members received the class settlement notice by mail (approximately 98.51%), we believe that such result is adequate and satisfies due process. Moreover, similar deliverable rates have been approved in other class action settlements. *Carillo v. 27-39 East 30 Rest Corp., et al*., No. 13-cv-4491 (S.D.N.Y., Feb 2, 2015) (deliverable rate of 60% approved for final class fairness in restaurant case where many employees were transient and undocumented). While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008), citing *Wal–Mart,* 396 F.3d at 113–14.  Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing

the means likely to inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988); *In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail (as was done in the instant case), would in most cases be the 'best notice practicable.' *Id.* Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice all meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).

Ultimately, the Administrator successfully notified 3,300 of the 3,350 Class Members for a successful mailing percentage of 98.51%. Accordingly, the Court should find that at all times the efforts made by the Claims Administrator to locate and notify Class Members were diligent and resulted in a reasonable and adequate distribution of the mailed Notice of the proposed class settlement to the Class.

## III. Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure,

only individuals who cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Lee Dec. ¶¶ 14. During the litigation, counsel highly experienced in wage and hour law represented Plaintiffs and Defendants.

As of May 25, 2021, the deadline for class members to object to the settlement, no individual has objected to the settlement. Lee Dec. ¶¶ 21.

Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement class; (2) grant final approval of the Settlement Agreement as fair, reasonable, adequate

and binding on all Class Members who have not timely opted-out; (3) approve the FLSA settlement; and (4) fully and finally dismiss the Litigation with prejudice.

Dated: May 28, 2021                    Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: */s/ C.K. Lee*         
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*